## VALLIER V. BRAKKE.

1. Where it is claimed that a certain person who voted at an election was not a qualified elector, he may be asked, as a witness on direct examination, no question of personal privilege being involved, the general question, for whom he voted. The manner of marking his ballot is a subject of cross-examination.

2. Under the provisions of sections 4, 6, chapter 80, Laws 1893, an elector may adopt either of four methods in designating the candidates for whom he desires to vote. First. He may make a cross in the circle at the head of a party ticket, and in this manner vote the entire ticket. In such case that ticket is full and complete, and constitutes his ticket. Second. He may make a cross in the circle at the head of the party ticket, and may erase on that party ticket the names of the candidates for whom he does not desire to vote, and not supply the place of the erased name or names. He then votes the party ticket, except as to the candidates whose names are erased, and as to those the ticket is not

filled. Third. When the elector has made a cross in the circle at the head of the party ticket, and erased the name of one or more candidates thereon, he may fill out his ticket in whole or in part by placing a cross at the left of the name of candidates on other tickets, thus making his ticket to consist of the names not erased on his own party ticket and the name or names of candidates on other tickets. Fourth. If the elector chooses, he may omit the cross, in the circle at the head of any party ticket, and make up his ticket by placing a cross to the left of the names of such candidates as he desires to vote for upon any ticket on the ballot.

3. When the elector makes a cross in the circle at the head of a party ticket, and erases no name thereon, the law declares it shall be counted for the party ticket "throughout," and no cross or mark opposite the name of any candidate on any other ticket can be resorted to to defeat the declared effect of such a cross at the head of the ticket.

4. The law has prescribed the manner in which an elector may mark his ballot, and what act he may do to designate the candidates for whom he desires to vote, and in marking his ballot he must substantially conform to the requirements of the law.

5. A cross at the head of the party ticket, but not within the circle, is a nullity.

6. A cross at the right of a candidate's name is not an informality in the form of marking, but is unauthorized and of no effect.

7. The erasure of a name upon a ticket marked with a cross in the circle at the head thereof, and the writing thereunder of the name of the candidate for the same office on another ticket, is unauthorized, and cannot be counted for the latter candidate.

8. If the act of erasing a candidate's name on a party ticket. properly marked by a cross in the circle at the head thereof, is such that it can clearly be seen that the voter has made an effort to erase the name, and intended in fact so to do, any informality merely in the manner of doing it should be disregarded.

9. A straight diagonal line at the left of the name of a candidate does not constitute a cross and should be disregarded.

10. One or more circles within the circle at the head of a party ticket do not constitute a cross within the circle, and should be disregarded.

11. When the intention of the elector to make a cross is clearly apparent, and the cross is made, whether with a stamp or otherwise, any informality merely in making it should be disregarded.

12. The law makes no provision for a cross in the circle at the head of more than one party ticket, and a cross in the circle at the head of two or more party tickets neutralizes each other; and such cross, as to all the

party tickets so marked, should be desregarded, and the ballot treated as though no cross were made at the head of any party ticket.

13. When an elector does not make a cross in the circle at the head of any party ticket, he may indicate the candidates for whom he desires to vote by placing a cross at the left of the candidate's name on any ticket and he need not erase any name on the ballot.

14. When the elector writes his own name on his ballot, such ballot is marked so that it can be identified, and is void, and should not be counted.

(Syllabus by the court.   Opinion filed Aug. 24, 1895.)

Appeal from circuit court, Moody county. Hon. JOSEPH W. JONES, Judge.

Election contest.   Defendant had judgment and plaintiff appeals.   Reversed.

The facts are stated in the opinion.

*F. D. Gay* and *U. S. G. Cherry* for appellant.

The ballots themselves are the primary evidence of the votes cast.  People v. Holden, 28 Cal. 124; Harpman v. Young, 20 Pac. 17; Dorey v. Lynn, 31 Kas. 758; Coughlan v. Beard, 67 Cal. 303; State v. Judge, 13 Ala. 805; Hudson v. Solomon, 19 Kas. 177. Each vote is presumed to be legal until the contrary is clearly shown.  Clark v. Robinson, 88 Ill. 498; State v. Olin, 23 Wis. 309.

Where on account of fraud, disregard of law, negligence or gross mistake, the true result in any precinct cannot be ascertained, and the vote of that precinct is sufficient to change the general result of the election, the vote of such precinct should be entirerly disregarded. Londoner v. People, 26 Pac. 135; McCrary Elections, § 540; Lloyd v. Sullivan, 24 Pac. 218; People v. Hanns, 57 N. W. 738; Judkins v. Hill, 50 N. W. 140; Patton v. Coates, 41 Ark. 111; Russell v. State, 11 Kas. 308; Manns case, 2 Phila. 320.

*Hosmer H. Keith*, for respondent.

Legislative construction, although not necessarily conclusive upon the judicial department of the government, is entitled to great weight when deliberately given. Coutant v. People, 11 Wend. 511; Jackson v. Board, 52 N. W. 169; Bishop, Written Laws, 35; Sedgwick Const. 214.

CORSON, P. J.　This is an election contest proceeding. The findings and judgment were in favor of the defendant, and the plaintiff appeals.

At the general election held in 1894 the plaintiff and defendant were opposing candidates for the office of county treasurer of Moody county. The vote as canvassed by the county board of canvassers, gave to the plaintiff 739 votes and to the defendant 742 votes, and thereupon a certificate of election was issued to the defendant. Within the proper time the plaintiff served a notice of contest, in which he alleged numerous errors in the canvass made by the judges of election, and set out in detail the number of ballots in the various precincts that he claimed had been illegally counted for the defendant. The defendant, in his answer, denied that any of the votes counted for the defendant were not legally counted for him, and alleged that a large number of votes had been illegally counted for the plaintiff, setting out the number in each precinct in detail. These issues involved the canvass in nearly all of the precincts in the county. The pleadings are voluminous, and we do not deem it necessary to set them out in this opinion, as the findings of the court present substantially all the questions that we are called upon to decide. The case was referred to a referee to recount the ballots of the various precincts, and the referee performed that duty, and presented to the court with his report all the ballots in regard to which there was any contest. These ballots will be considered later on in this opinion.

It was alleged by the defendant that four of the voters who voted for the plaintiff were not qualified electors, and the court so found, and these votes were deducted from the number of votes cast for plaintiff. On the trial each of these four persons was a witness upon the stand, and was each asked the question, for whom he voted for county treasurer. The question was objected to in each case, upon the ground that the question called for a conclusion of the witness, and is incompetent. And the appellant contends that under the Australian ballot system the question is improper, as the only method by which it can be shown how the

elector voted is by showing in what manner he marked his ballot, but we can not agree with counsel in this contention. We are of the opinion that the witness may be asked the general question, as under the former system of voting (McCrary, Elect. § 457; People v. Pease, 27 N. Y. 45), and that the question as to the manner in which he marked his ballot is a subject for cross-examination. Parties must be presumed to know for whom they voted at an election; and while it might be possible that a voter had, by a failure to properly mark his ballot, failed to carry out his intention to vote for a particular candidate, yet there is no presumption that such would be the case. We think, therefore, the ruling of the court upon this question was correct.

It is further contended by the appellant that the court erred in holding that these four persons were not qualified electors, and in deducting these votes from plaintiff's total vote. But the evidence as to all these persons was before the trial court, and the question presented in each case was one of fact. After a careful examination of the evidence, we cannot say that the court did not properly find that these persons were not qualified electors. The question was not free from doubt, and this court might possibly have arrived at a different conclusion, but there is no such preponderance of the evidence in favor of the plaintiff as would justify this court in reversing the judgment of the court below.

It is also contended by appellant that the court erred in refusing to recount the ballots in River View township. This precinct, as canvased, gave 51 votes for the defendant and 26 votes for the plaintiff. In the canvass of the vote of that township by the judges of election there were gross irregularities on the part of the judges, found by the court not to be intentional or fraudulent, but resulting from carelessness and improper marking of the ballots by some of the judges in making the canvass. The court, we think properly, concluded that these marks were made upon the ballots without any wrongful intention, and yet the same were so defaced by marks and attempted erasures on the part of the judges of election that it could not safely undertake to recount them.

Appellant further contends that when the court determined that it could not, by reason of these irregularities, recanvass the vote, it should have disregarded the entire vote of that precinct. There would be much force in this contention if the pleadings were such as to have properly brought the matter before the court. But in the notice of contest these irregularities were not made one of the grounds of contest. The contestant only claimed that two of the ballots in that precinct were improperly counted in favor of the defendant, and these two have not been set out in the record, and there is no findings of court in regard to them. Hence, they are not properly before this court for review. Such irregularities as were shown on the part of the judges of election in that precinct, though not fraudulently intended are inexcusable. Why the judges of election should have made marks in pencil and ink upon the ballots, and so changed them that a court is compelled to find that it cannot safely attempt to recanvass them, is incomprehensible, and deserves the severest censure. We regret that the record is not in a condition to authorize us to fully review these irregularities.

The court found specifically the markings on the ballots, and has fully set them out in its findings of fact. These findings are a part of finding No. 3, but, to facilitate reference to this part of the finding, we have subdivided it into sections, and indicated them from 1 to 21 in parentheses.

"(1) Said Exhibits 14 and 22 of Spring Creek township, 1 of Lone Rock, 1 of Jefferson, 5 of Egan, and 2 of Flandreau, are each marked with a cross in the circle at the top of the Republican column, a cross opposite the the name of C. Brakke on the People's party ticket, and the name of A. J. Vallier on the Republican ticket is not erased, and were not counted for either of said candidates, to which the plaintiff excepts.

"(2) Exhibit 8 of Flandreau township has a mark as follows, X, at the top of the Republican column and about one-half inch to the right of the circle, but within the column, which mark the court construed to indicate the intention of the voter to vote Re-

publican ticket.   Vallier's name is not erased.   A cross appears at the right of the name of C. Brakke on the People's party ticket. Court counted for neither, to which plaintiff excepts.

"(3)   Exhibits 4 of Grovena township, 1 and 2 of Ward township, 11 of Spring Creek, and 10 of Flandreau township, are each marked with a cross at the right of the name of C. Brakke, and without any cross in any of the circles at the top, and in case of Exhibits 1 and 2 of Ward the name of Vallier is erased, and were counted for the defendant, to which the plaintiff excepts.

"(4)   Exhibit of Blinsmon township has cross in circle at top of Republican party ticket, the word 'treasurer' and the name 'A. J. Vallier,' are erased, and the name 'C. Brakke' is written with lead pencil in space below name 'A. J. Vallier,' and was counted by the court for defendant, to which plaintiff excepts.

(5)   Exhibits 10 of Spring Creek township, 2 of Lone Rock, 1 of Blinsmon, are each marked with a cross in the circle at the top of the Republican column, also a cross made with the official stamp on the name of A. J. Vallier in said Republican column, and a cross to the left of C. Brakke in the People's party column, and were counted by the court for the defendant, which the court held to constitute an erasure of the name of said A. J. Vallier, to which the plaintiff excepts.

"(6)   Exhibit 4 of Flandreau township is marked with a cross in the circle at the top of the Republican column, the name of A. J. Vallier is erased, and one straight diagonal line at the left of the name of C. Brakke in the People's party ticket appears, and is counted for the defendant, to which the plaintiff excepts.

"(7)   Exhibit 21 of Spring Creek is marked with a circle within the circle at the top of the People's party ticket, and has no other mark, and is counted for the defendant, to which the plaintiff excepts.

"(8)   Exhibit 20 of Spring Creek has a large blue daub on the top of the circle at the head of the People's party ticket, and

has no other mark, which the court constued as a cross made with the official stamp, to which plaintiff excepts.

"(9) Exhibit 7 of Coleman township has the circle at the top of the People's party ticket filled with circular lead pencil marks, and has a cross to the right of the name of C. Brakke, and on the outer edge of the People's party column, and is counted as a vote for defendant, to which the plaintiff excepts.

"(10) Exhibit 19 Spring Creek and Exhibit 1 of Enterprise each have a cross at the top of the People's party ticket, but entirely outside of and to the left of the circle at the top thereof, and are each counted as a vote for the defendant, to which the plaintiff excepts.

"(11) Exhibits 6, 12, 13, and 18 of Spring Creek, and 2 and 4 of Blinsmon, are each marked with a cross in the circle at the top of the Republican column, three crosses on the name of A. J. Vallier, and one cross to the left of the name of C. Brakke, and are each counted as a vote of Brakke, to which plaintiffs excepts.

"(12) Exhibit 7 of Spring Creek is marked with a cross in the circle at the top of the Republican column, three crosses on the name of A. J. Vallier, and one cross to the right of the name of C. Brakke, and is counted as a vote for Brakke, to which the plaintiff excepts.

("13) Exhibit 2 of Egan, 14 of Flaudreau, and 2 of Fremont, are each marked with a cross in the circle at the top of the People's party column, a cross opposite the name of A. J. Vallier on the Republican ticket, and the name of C. Brakke on the People's party ticket is not erased, and were not counted for either of said candidates.

"(14) Exhibit 3 of Egan is marked with a cross in the circle at the top of the People's party column, and also a cross in the circle at the top of the Republican column, a cross at the left of the name of A. J. Vallier, and the name of C. Brakke in the People's party ticket is not erased, and was counted by the court for the plaintiff A. J. Vallier.

"(15) Exhibits 13 of Flandreau and 10 of Spring Creek are

each marked with a cross at the right of the name of A. J. Vallier, and without any cross in any of the circles at the top, and were counted for the plaintiff A. J. Vallier.

"(16) Exhibits 2 of Clare, 10 Coleman, 4 Egan, and 17 Spring Creek are each marked with a cross at the top of the Republican party ticket, but entirely outside of the circle at the top thereof, and at distances varying from on -quarter of an inch to one inch from said circle; except Exhibit 4 of Egan, which has two crosses at the top of the said Republican party column, one on the top edge of the circle, the main body of the cross being outside the circle and one of the diagonal lines of the cross extending across the top of and slightly within the circle, and the other about three-quarters of an inch above said circle; and each of said exhibits was counted for the plaintiff, A. J. Vallier.

"(17) Exhibits 1 of Egan, 2, 3, 5, 8, and 9 of Coleman, and 1 of Fremont are each marked with a cross in the circle at the top of the People's party column, and have two or three crosses made with the official stamp directly on the name of C. Brakke on said People's party ticket, except Exhibit 8 of Coleman, which has only one stamp on name of Brakke, and a cross to the left of A. J. Vallier on the Republican ticket, and were counted for A. J. Vallier. These crosses the court held to constitute erasures of the name of Brakke.

"(18) Exhibit 1 of Grovena has a very slight red blur in the circle at the top of the Republican party ticket, and is not otherwise marked, and was counted for the plaintiff A. J. Vallier, which the court construed as a cross made with the official stamp.

"(19) Exhibit 12 of Flandreau is not marked in any circle at the top, the name of A. J. Vallier on the Republican ticket is erased, and there is a cross opposite and to the right of the name of C. Brakke, and between said People's party column and the column of the Independent candidates for county offices, and was not counted for either the plaintiff or defendant.

"(20) Exhibit 1 of Flandreau is marked with a cross in the circle at the top of the Republican column, a cross at the left of

the name of A. J. Vallier on said Republican ticket, and the name of C. Brakke on the People's party ticket is erased, and on the back of said ballot is written the name of the person who cast said ballot, to-wit, 'A. W. Seaman,' which name was so written on said ballot while the said ballot was in the possession of the person who cast the same, the said A. W. Seaman, and was written by him after said ballot was delivered to him by the judges of election, and before the same was deposited in the ballot box, and was counted for the plaintiff A. J. Vallier.

"(21) Exhibit 3 of Grovena township is marked with a cross in the circle at the top of the People's party column, the name of C. Brakke on said People's party ticket is erased, and the name of 'A. J. Vallier' is written under the name of C. Brakke so erased, and was counted for the plaintiff A. J. Vallier."

Before proceeding to discuss these several findings, it will be proper to examine the provisions of the Australian ballot law, adopted by the legislature of this state, and determine the rules that should govern canvassing boards and courts in construing the same. That the legislature designed to and has made a radical change in the system of voting is too apparent to require discussion. The purpose of the change is apparently to provide a simple, easy and certain method by which an elector can indicate his intention in voting, and to prevent uncertainty by mutilation of the ballots, and also to secure to the elector the right to cast his vote uninfluenced and in secret. To accomplish these objects ballots are provided containing the names of all the candidates properly arranged in columns, and one of these is furnished to the voter by the judges of election, and the elector, in a booth secure from intrusion, is permitted to prepare his ballot by marking the same in the manner prescribed by statute to designate the candidates for whom he casts his vote. The manner in which he may designate such candidates is specified in sections 4, 6, chapter 80, Laws 1893, in force in the election of 1894: "The voter, after retiring to the booth as provided in section twenty-five of said chapter, may make a cross in a circle to be printed for that purpose at

the head of each ticket, over the ticket he desires to vote, and if he desires to vote for any candidate on any other part of the ballot, he may erase the name of the candidate for that office on his ticket, and place a cross to the left of the name of such person for whom he desires to vote, and in case a voter does not wish to vote a party ticket he need not cross the circle at the top, but may put a cross at the left of the name of any candidate for whom he wishes to vote." "Sec. 6.  *  *  *  Tickets marked in a circle at the top with a cross showing the intention of the voter to designate such ticket as his vote, shall be counted as voted throughout, except when a name is erased with a lead pencil or otherwise, and a cross to the left of any name on any other ticket shall be taken as a vote for such person.  Provided the name of the candidate for the same office on the ticket marked at the top by a voter is erased, or it otherwise appears that no other person has been voted for the same office."

It will be observed, from an examination of these sections, that the elector may adopt either of four methods in designating the candidates for whom he desires to vote. First. He may make a cross in the circle at the head of a party ticket, and in this manner vote the entire party ticket. In such case that ticket is full and complete, and constitutes his ticket. Second. He may make a cross in the circle at the head of the party ticket, and may erase on that party ticket, the names of the candidates for whom he does not desire to vote, and not supply the place of the erased name or names. He then votes the party ticket, except as to the candidates whose names are erased, and as to these the ticket is not filled. Third. When the elector has made a cross in the circle at the head of the party ticket, and erased the name of one or more candidates thereon, he may fill out his ticket in whole or in part by placing a cross to the left of the name of candidates on other tickets, thus making his ticket to consist of the names not erased upon his own party ticket, and the places of those erased filled by the name or names of candidates on other tickets. Fourth. If the elector chooses, he may omit the cross in the cir-

cle at the head of any party ticket, and make up his ticket by
placing a cross to the left of the names of such candidates as he
desires to vote for upon any ticket on the ballot, the candidates so
voted for representing different offices on the ticket. The statute
having prescribed the manner in which the elector may designate
by marks upon his ballot the candidate for whom he intends to
vote, and declared the effect of such remarks, neither the judges
of election nor the courts are authorized to go beyond those marks
in order to ascertain the voter's intention. When, therefore, the
elector makes a cross in the circle at the head of a ticket, and
erases no name thereon, the law declares it shall be counted for
the party ticket "throughout," and no cross or mark on any other
ticket can be resorted to to defeat that intention.

The learned counsel for the respondent contends that a cross
placed to the left of a name on the opposite ticket, although the
party ticket has the cross in the circle at the head of the same,
and the name on that party ticket is not erased, raises a doubt as
to the intention of the voter, which should be resolved either in
favor of the candidate who has the cross to the left of his name,
or the vote should not be counted for either candidate. But we
cannot agree with counsel in this contention. The effect of such
a marking of a ballot having been declared by the legislature to
be a vote "throughout" for the party ticket, it is not competent
for the court to find any other intent.

It is also contended that a cross without the circle at the top
of a party ticket, a cross to the right of a name instead of the left,
and the name erased and the name. of a candidate on another
ticket written under the name erased, should all be regarded ac-
cording to the intention of the party, as found by the court. But
we cannot subscribe to this doctrine. The law has prescribed the
manner in which an elector may arrange his ticket, and what act
he may do to designate the candidate for whom he desires to vote.
His act must correspond with his intention, and unless it does
the vote cannot be counted. The system devised is so simple that
a man of sufficient intelligence to know what a circle is, how to

make a cross, and left from right, can find no difficulty in making up the ticket he desires to vote. He can have no difficulty in expressing his intention in the manner the law has prescribed. It is not necessary, therefore, to impose upon judges of election or courts the duty of ascertaining the intention of the voter, except in the manner pointed out by the statute, namely, by the marks he has placed upon the ballot in the manner prescribed by law.

With these preliminary observations, we proceed to examine the findings of the court to which exceptions were taken by the plaintiff.

It will be noticed that in finding 1 six ballots were marked by the voters by crosses in the circle at the head of the Republican ticket, and no name erased thereon. They were not counted for either candidate for the reason that there was a cross opposite the name of the defendant. This ticket should have been counted "throughout" for the plaintiff, and hence the court erred in not so counting them.

By finding No. 2 the court finds that the cross at the head of the ticket was not in the circle, but about one-half inch therefrom. The law says, "A voter may make a cross in a circle * *. * at the head of the ticket, over the ticket he desires to vote." The voter is not authorized to make the cross elsewhere than in the circle, and when the cross is not so made the cross purporting to be at the head of the ticket should be disregarded. If the cross is not inside the circle, it is difficult to establish any fixed rule to govern judges of election as to how near or how far from the circle the cross should be placed to entitle the vote to be counted. The court also found that a cross was made at the right of defendant's name. Had this cross been placed at the left of defendant's name, it would have been a vote for defendant. The cross at the head of the republican ticket not being in the circle, the ticket could not be counted for the plaintiff. But the cross, being placed to the right of defendant's name, was not effectual for any purpose, as the law does not authorize a voter to designate a candidate for whom he intends to vote by a cross to the right

of the candidate's name, but only to the left of such name. As before stated, judges of election and courts can only determine the intention of the voter from the act done in accordance with the statute. The court, therefore, correctly excluded the vote.

Finding No. 3 presents a question not presented by either of the others. There is no cross at the head of any ticket, but a cross is placed at the right of defendant's name. These votes were counted for the defendant. This is not an an informality in marking, but is a total failure to mark the cross in such a manner as to entitle the vote to be counted.

Finding No. 4 presents a still different question. It is found that the word "treasurer" on the Republican ticket is erased, and the name of the defendant is written under the name of the plaintiff on this ticket. The court counted this ballot for the defendant. This was error. The law has neither provided for any such marking, nor can it be recognized. One of the purposes of the law evidently was to avoid mutilated or scratched tickets with names written in, and especially to avoid "pasters"—one of the great sources of fraud under the old system. It may be it was the intention of the voter to vote for the defendant, but he has not expressed that intention in any manner prescribed by the statute. The vote, therefore, should not have been counted for defendant.

The finding No. 5 of the court is clearly correct, and its conclusion that a cross made by the official stamp on the name of the plaintiff was an erasure of the name was also correct. If the act of erasure is such that the court can clearly see the voter has made an effort to erase the name, and intended in fact to erase it, any informality in the manner of doing it will be disregarded.

In finding No. 6 the defendant's name had opposite to it, to the left, a short diagonal line instead of a cross. The law provides for a cross, and hence this vote was improperly counted for the defendant.

Finding No. 7 shows there was no cross in or outside of the circle, but a circle within the circle. The cross is the distinguishing mark in our Australian ballot system, and we think it would

be going too far to hold that a circle could be substituted for the cross prescribed by the statute. It may have been the intention of the voter to substitute the circle for the cross, but the law permits no such substitution. If the voter desires to have his vote counted he must substantially comply with the law. We think it was error to count this vote for defendant.

In No. 8 the court finds that the mark in the circle at the head of the Republican ticket was a cross made with the official stamp. This we think was correct. If the intention was to make a cross in the circle, any informality in carrying that intention into effect, so long as the act was done in the manner prescribed by the statute, was properly disregarded.

The ballot in finding No. 9 should not have been counted for the defendant. The circles within the circle at the head of the ticket could not be construed to be a cross, and the cross to the right of the name was not effectual for any purpose. This vote should not have been counted for either party.

The court finds that in No. 10 each of the ballots had a cross at the head of the ticket, but outside the circle. These tickets were counted for the defendant. This was error for the reasons heretofore stated.

The court finds in No. 11 that five ballots were each marked with a cross in the circle at the head of the Republican ticket, the name of the plaintiff erased by three crosses upon his name, and a cross to the left of defendant's name, and the same were counted for the defendant. In this we think the court was correct. A name may be erased by crosses made upon the same, thus showing an intention to erase it, as well as by drawing a line through it. One of Webster's definations of "erase" is to "cross out."

The court finds in No. 12 a cross in the circle at the head of the Republican ticket, the name of the plaintiff crossed out, and a cross at the right of the name of the defendant, and the ticket was counted for the defendant. This was error. It should not have been counted for either party,—not for plaintiff, because his name was erased; not for defendant, because no cross was placed to the

left of his name, as the law requires, in order that the vote may be counted as given for him.

Finding No. 13 is that three ballots were marked by a cross in the circle at the head of the Peole's party ticket, and the name of defendant was not erased, and a cross was placed opposite the name of the plaintiff. This ticket was counted for neither candidate. It should have been counted for the defendant, for the reason that his name was not erased, and hence the ticket was a ticket for the People's party "throughout." The fact that there was a cross opposite plaintiff's name was of no importance, so long as the defendant's name was not erased.

The court finds in No. 14 that a cross within the circle was made at the head of both the Republican and People's party tickets, and a cross placed at the left of the name of the plaintiff. This was correctly counted for the plaintiff, as the cross at the head of the two tickets was equivalent to a cross at the head of neither, and the cross to the left of the plaintiff's name made it a vote for plaintiff.

The court finds in No. 15 that two ballots having no cross in the circle at the head of the ticket had a cross to the right of the name of plaintiff, and they were counted for him. This was error. The cross, not being to the left of the name, was a nullity, and these ballots should not have been counted for either party.

The court finds in No. 16 that four ballots had crosses at the head of the Republican ticket, but not in the circle. These were counted for the plaintiff. This was error. The cross, not being in the circle, was a nullity, and the ballots should not have been counted for either party.

In finding No. 17 the court finds seven ballots marked with a cross in the circle at the head of the People's party ticket, three crosses made with the official stamp directly on the name of the defendant, and a cross to the left of the name of plaintiff. The crosses on the name of the defendant being in effect an erasure of the defendant's name, these were correctly counted in favor of the plaintiff.

In finding No. 18 the court finds that a "very slight red blur" in the circle at the head of the Republican ticket was a cross made with the official stamp, and counted the ballot for plaintiff. The ballot is not before us, and the finding of the court is conclusive.

The court finds in No. 19 that there was no cross at the head of the Republican ticket, that the name of the plaintiff was erased, and a cross to the right of the name of the defendant, and between said People's party ticket and the Independent ticket, and the court did not count it for either. This was correct, as both the erasure of plaintiff's name and the cross to the right of defendant's name were nullities.

In finding No. 20 the court finds that the voter wrote his name upon the ballot, but counted it for plaintiff. This was error, as the name upon the ballot was unauthorized, and rendered it void. Spurgin v. Thompson (Neb.) 55 N. W. 297.

The court finds in No. 21 that there was a cross in the circle at the head of the People's party ticket, the name of the defendant erased, and the name of plaintiff written under the name of defendant. This was counted for plaintiff. This was error. No elector is authorized, as before stated, to write the name of a candidate upon the ballot. The names are all printed, and a party wishing to vote for a candidate on another ticket must designate the candidate intended to be voted for by a cross to the left of the name, and he can indicate his intention in no other manner. This vote should have been excluded.

It is contended by counsel for respondent that the judgment in this case should not be reversed, for the reason that there are only six ballots—those mentioned in finding 1—sufficiently described to be reviewed by this court on this appeal, and that there are three ballots marked in the same manner (finding No. 13) not counted for the defendant that should have been counted for him (if the court finds the six ballots in finding No. 1 should have been counted for the plaintiff), thus leaving the defendant with one majority in any event, and that consequently the error, resulting in no prejudice to the plaintiff, would not be reversible error. But

we cannot agree with counsel in this contention. We are of the opinion that the description of the marks upon all the ballots we have considered is sufficient to enable the court to determine the legal questions presented by such markings. We have therefore considered all the ballots, to the rulings upon which exceptions were taken by the plaintiff, as before us for review. But, having arrived at the conclusion that the record shows errors which must defeat the judgment appealed from, we have deemed it proper to express our views upon the other ballots, the marking upon which is described in the findings of the court, though, being in favor of the plaintiff, they are not excepted to, as these ballots will probably be before the court upon a retrial of this case, and possibly the expression of our views at this time may save the expense of another appeal. If we felt satisfied that a full description of all the contested ballots was before us, we might be justified in directing what judgment should be rendered, but, as this does not fully appear from the record, we shall simply reverse the judgment and order a new trial.

There was much discussion on the argument and in the briefs of counsel as to the duty of judges of election and courts to carry out the intention of the voter. This is true to a certain extent; but, as the legislature has required the elector to express his intention by certain well defined markings upon his ballot, his intention must be determined by these markings, and not by the uncertain and undefined ideas of the judges of election, or by the courts, as to his intention. The legislature has clearly and precisely defined the manner in which the elector may designate the candidates for whom he desires to vote, and has prescribed definite and fixed rules to govern the voter in designating such candidates. As before stated, the system is simple, and there is no difficulty in the elector's complying with the rules. In our view, it is neither the duty of judges of election nor the courts to fritter away the benefits of the system by strained efforts to get at the intention of the voter in any manner other than by following the rules prescribed by the legislature. If the elector does not take interest

enough in his vote to follow these simple and easily understood rules, he can complain of no one if his vote is not counted. A system so simple and plain, and which can be comprehended by any elector of ordinary intelligence in a few minutes, must be followed. There can be ho excuse for not following it. The judgment of the court below is reversed and a new trial ordered.