Spurgin v. Thompson.

JOSEPH M. SPURGIN, APPELLEE, v. HENRY B. THOMPSON, APPELLANT.

FILED MAY 9, 1893.    No. 5760.

1. **Election Contest**: APPEAL FROM COUNTY COURT: ISSUES IN APPELLATE COURT. In an election contest the incumbent, having dismissed before judgment a paragraph of his answer alleging the improper refusal to count certain ballots, cannot by an original amendment in the district court, over the contestant's objection, set up the same matters as to which he had entered a dismissal in the county court.

2. **Elections**: MARKED BALLOTS. The indorsement of the name "Eagleham," he not being one of the election judges, upon a ballot, was within the inhibition of the statute forbidding the marking of his ballot by an elector, and vitiates said ballot.

3. ———: AUSTRALIAN BALLOTS: CROSS MADE WITH PENCIL INSTEAD OF INK. While the statute requires that the cross which signifies the preference of the elector shall, in ink, be placed in a space designated for that purpose, a ballot upon which such preference is indicated by a cross made with a lead pencil, outside the space designated, but opposite the name of the choice of the elector, should be counted according to such manifest intention.

APPEAL from the district court of Keya Paha county. Heard below before KINKAID, J.

*R. M. Logan* and *Reese & Gilkeson*, for appellant.

*L. K. Alder*, contra.

RYAN, C.

According to the original canvass of Keya Paha county, there were cast 337 votes for Hugh Booth, and 338 votes for H. B. Thompson, for sheriff of said county, and there was accordingly issued to said Thompson a certificate of election. Within the proper time, Joseph M. Spurgin, an elector of said county, as provided in such cases, filed in the county court of said county a complaint accompanied by a bond, with the view of contesting said election of sheriff. The complaint alleged irregularities as to some precincts, of which no notice will be taken, because, whatever may have been the merits of the contest, there was no evidence to show such merits. The complaint alleged that in Simpson precinct there were four ballots regularly cast, which showed clearly the choice of the voter in each case for sheriff, but that said ballots, which were cast for Hugh Booth, were by the judges of election omitted from their canvass and return. The complaint alleged that in Garfield precinct the judges of election omitted from their return of the ballots and votes two ballots which had been cast for said Hugh Booth for sheriff, upon one of which ballots the voter had placed a cross indicating his choice, not upon the margin however, but just opposite and very near the name of Hugh Booth; the other ballot was crossed in the same way as that last mentioned, except that the first described ballot was marked with ink, the other with a lead pencil. The complaint further set forth that in McGuire precinct one ballot was counted for Thompson, upon the back of which the voter had marked the name of "Eagleham," and that said ballot should not have been counted for the incumbent, Thompson.

The incumbent, by an amended answer, denied the averments alleged as reasons for receiving and for rejecting the ballots as aforesaid, in so far as they related to the office of sheriff. There were various irregularities affirmatively al-

leged in said answer, but as there was no evidence in relation to them they will receive no attention.    As there was a complication as to the seventh paragraph it is copied *in extenso.*    It was as follows:

"7th.  The incumbent, for further and other defense to contestant's complaint, alleges that at said election in Norden precinct in said county on the 3d day of November, 1891, the judges of election therein, while canvassing the votes and ballots of said Norden precinct and the ballots cast therein, erred in this: That there were three ballots in the ballot-box cast at said election in said precinct which were regular, legal, and proper ballots and which the said judges of election rejected, and wholly omitted and rejected, from their return and count of the ballots so cast at said election in said precinct, each of which said three votes were cast for the incumbent Henry B. Thompson for sheriff of Keya Paha county, said ballots being regular and legal and official ballots, upon two of which the voters had marked the cross in lead pencil, and the third one the voter had scratched out all the names of all the candidates except the names of the candidates for whom he intended to vote.  The incumbent alleges that said three ballots, and each of them, were legal ballots, and that the same were sufficiently plain for the intention of the voter to be gathered therefrom, so far as the vote for the office of sheriff was concerned, and that the said three ballots should have been canvassed, counted, and returned as legal votes, and counted for the said Henry B. Thompson for sheriff of said county as aforesaid.  The incumbent further alleges that in said Norden precinct at said election there were cast for said incumbent five other votes which the judges of election refused and neglected to canvass and count for said incumbent for the office of sheriff, but did wrongfully count, canvass, and return said five ballots as having been cast for the said Hugh Booth.  Incumbent alleges that said five ballots were legal and proper and offi-

cial ballots and should have been canvassed, counted, and returned for said incumbent, and incumbent asks that the court count the eight ballots herein referred to as having been cast in said Norden precinct for said incumbent, and for the purpose of said count incumbent asks that the ballots cast in said Norden precinct be brought in and inspected by the court."

There was a reply in denial.

During the trial in the county court, the incumbent, with leave of court, dismissed paragraph 7th of his answer above quoted, whereupon contestant as to the same precinct filed the following, omitting formal parts:

"The contestant asks leave to amend his complaint herein to comply with the evidence, in this, that the evidence showed that in Norden precinct in said county at said election held therein on November 3, 1891, there was an error in the canvass, count, and return from said precinct made by the judges in said precinct, in this, the whole number of votes cast as shown by the return of the judges for Hugh Booth for sheriff of said county was forty-one, when in fact there were cast for him in said precinct forty-two legal and official ballots, and this is shown fully by a recount of the ballots returned from said precinct made by the court in this case, and as shown by the records in this case, and incumbent has dismissed paragraph seven of his amended answer herein as to the vote of said precinct, after the returns from said precinct have been examined by the court at incumbent's request, as shown by the record in this case, and contestant asks that forty-two votes and ballots be counted from said precinct as votes for said Hugh Booth for sheriff of said county of Keya Paha, Nebraska, instead of forty-one as shown by the official canvass of said precinct."

Upon a trial had in the county court, it was adjudged that Hugh Booth had received 341 votes, and that H. B. Thompson had received 337 votes for sheriff, and Booth

was accordingly declared elected. From this an appeal was taken to the district court of said county, where, upon trial had, it was adjudged that each candidate had 340 votes, and it was ordered that the right to hold the office in question should be determined by lot. This was done and Hugh Booth was duly designated, in that way, as the candidate entitled to the office. An appeal brings the case into this court.

In the district court the contention as to Norden precinct was considered in determining the rights of the parties to the contest. The result in that precinct was first called in question in the county court, by the incumbent in paragraph seven of his answer. This paragraph was dismissed by the incumbent during the trial in the county court. The contestant thereupon amended his complaint so as to allege that as against Booth's rights there had been a mistake in canvassing the votes in said precinct, whereby Booth had been deprived of one vote. When the appeal was taken to the district court incumbent had, therefore, no averments in the pleadings of anything improper as against his candidacy having transpired in said precinct. On appeal from the county court to the district court the issues to be tried should be confined to those tried in the county court, except that new matter arising in the interim may be pleaded in the district court. (*School District v. McIntie,* 14 Neb., 46; *Baier v. Humpall,* 16 Id., 127; *Union P. R. Co. v. Ogilvy,* 18 Id., 638; *Lamb v. Thompson,* 31 Id., 448; *Bishop v. Stevens,* Id., 786.)

There was no basis for the incumbent to affirmatively claim in favor of himself upon averments of the contestant's complaint as amended, for those averments were only of matters hostile to the incumbent's contention confined to the act of canvassing. At any rate, even this amendment was dismissed by the contestant before the trial in the district court, and there could properly be considered no matters with reference to the vote in Norden precinct, even

though the district court had permitted a new amendment to be filed therein, alleging the same matter pleaded in the seventh paragraph of the answer, and voluntarily stricken out by the incumbent before the conclusion of the trial in the county court. The alleged irregularities as to Norden precinct are, therefore, not properly before this court for determination.

In Simpson precinct the official count gave Booth ten and Thompson twenty-two votes respectively. The ballots brought to this court by the incumbent, as part of the evidence to be considered in this appeal, show that there were cast twenty-one votes for Thompson and eleven for Booth. There were several witnesses in the district court who gave evidence that the ballots when counted showed that there were ten for Booth and twenty-two for Thompson. The ballots themselves were the best evidence upon this point, for the oral testimony amounted simply to an attempt to reinforce the statement of the certificate of the result arrived at by the canvassers. Undoubtedly this result both canvassers and the said witnesses at the time believed to be correct, yet to permit this canvass, no matter how proved, to control our inquiry, based as it must be upon an actual count of the ballots, would be to declare the result reached upon the first canvass conclusive, even in a contest calling such result in question. Neither the return of the canvassers nor oral evidence of it relieves this court of the onerous duty of counting the ballots properly submitted. Upon a careful canvass of the ballots of Simpson precinct we find there should be taken from the footings made by the canvassers one vote for Thompson, and there should be added one to the vote of Booth.

In Garfield precinct there was one ballot, on which, opposite the name of Booth, was a cross made with a lead pencil; for this reason alone this was rejected. This ballot should have been counted in favor of Booth. (*State v. Russel*, 34 Neb., 116.) In this same precinct the canvassers

threw out one vote for Booth because the cross required was placed directly opposite and near the name of Booth and not in the marginal space designated for it in the ballot. By sec. 150, ch. 26, Comp. Stats., it is *"Provided,* That when a ballot is sufficiently plain to gather therefrom a part of the voter's intention, that it shall be the duty of the judges of election to count such part." As to the preference of the voter who cast this ballot there could be no doubt, and the mistake made in rejecting it will be corrected by counting still another vote for Booth, which, with the one already noticed in Garfield precinct, increases the vote of Booth by two in that precinct.

In McGuire precinct there was cast a ballot upon which was indorsed the word "Eagleham," possibly, as suggested on the trial below, the name of an elector. This was cast and counted in favor of Thompson. It is provided in sec. 154, ch. 26, Comp. Stats., that "No elector shall place any mark upon his ballot by which it may afterwards be identified as the one voted by him." Clearly the indorsement of the word "Eagleham" was within the prohibition of this clause of the statute, and the ballot in question should therefore be rejected. This lessens the vote in favor of the incumbent by one vote. This disposes of the contentions of the respective parties, properly presented by the pleadings.

As the vote was canvassed originally, there were cast for Booth 337, and for Thompson 338 votes. As shown in detail, these totals should be varied in the following manner: to the total of 337 for Booth there should be added one vote from Simpson precinct and two from Garfield precinct, making Booth's entire number of votes 340. From Thompson's total of 338 there should be taken one vote counted for him in McGuire precinct, which leaves Thompson's entire number of votes 337. This entitles Booth to the office in question.

The claim was made with earnestness on this contest

that the ballots should not be counted because they had not been kept safely as required by statute. The evidence shows that they were kept in a vault adjoining the office of the county·clerk, in which were kept the records of deeds, mortgages, etc. There might possibly have been found an opportunity to remove a part of these ballots during the temporary absence of the clerk and his deputy from the office in the day-time, but they could have been removed at no other time, for at night the vault was secured by a combination lock. Even in the day-time it is shown that the clerk and his deputy kept special watch that nothing should be removed from the safe, and that whenever any one went into said vault it was under the surveillance of one of these officers. It is true that sometimes it happened that both the county clerk and the deputy were absent from the office, when it would be necessary to bring in wood, or for some like purpose, and the evidence shows that at some two or three times parties during such absence entered the vault unnoticed by any one, but we do not think there is any evidence that any vote was tampered with or removed from the vault in question. One ballot was referred to in the district court as missing, but there is nothing to raise the presumption that it was taken from the vault. It might have been lost before it was placed in the envelope, or might have been mislaid in the judicial proceedings afterwards. Under such circumstances it would be unsafe to presume that the ballots were not safely kept as required by law, thereby practically prohibiting a review by contest, or·upon appeal in any court, of the returns made by the canvassers.

It follows, therefore, that the judgment of the district court adjudging that Hugh Booth was the duly elected sheriff of Keya Paha county, for two years, from the 7th day of January, 1892, is

AFFIRMED.

THE other commissioners concur.