## T. H. Gill

*v.*

## E. D. Shurtleff.

*Opinion filed December 18, 1899—Rehearing denied February 7, 1900.*

1. Elections—*ballot should not be rejected because the election officers have put distinguishing mark thereon.* A ballot properly prepared by a legal voter should not be rejected because some one of the election officers, without participation of the voter, made an endorsement on the ballot which might serve as a distinguishing mark.

2. Same—*one who has merely declared his intention is not a legal voter.* One who has filed his declaration of intention to become a citizen of the United States but has not received a certificate of naturalization is not entitled to vote.

3. Same—*purpose of provision that election officers shall not make endorsements on ballots.* The provision of the Election law that election officers shall not make an endorsement on a ballot other than is specified by statute is to protect legal voters in secrecy of ballot.

4. Same—*illegal voters cannot claim protection of provision concerning endorsement.* The enforcement of the provision of the Election law that election officers shall not endorse ballots cannot be demanded solely to the end that a ballot unlawfully cast shall not be marked so as to distinguish it from lawful ballots.

5. Same—*ballots cast by illegal voters may be identified.* It is competent, on contest, to show that ballots cast by illegal voters were endorsed by the election officers with the words "objected to" before being deposited, and such ballots must be rejected as marked, where no other ballots bear such an endorsement.

6. Same—*provision requiring voter to swear he is unable to mark ballot is mandatory.* The provision of section 24 of the Election law of 1891 (Laws of 1891, p. 117,) requiring a voter to make oath that he is physically unable to mark his ballot before he may be assisted by the election officers is mandatory, and cannot be dispensed with though the voter is blind or nearly blind.

7. Same—*election officers cannot testify how ballot was marked though voter did not swear to disability.* Election officers who, under color of the statute, assist a legal voter to prepare his ballot cannot testify how such ballot was marked, although the voter was assisted on his unsworn statement that he was physically unable to mark ballot.

Appeal from the Circuit Court of McHenry county; the Hon. Charles E. Fuller, Judge, presiding.

R. K. Welsh, for appellant.

D. T. SMILEY, and C. P. BARNES, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

At the regular election held on the 18th day of April, 1899, in the city of Marengo, for the election of city officers, the appellant was a candidate for the office of mayor and the appellee was a rival candidate for the same office. The official canvass resulted in the declaration the appellee had received 252 votes and the appellant 250 votes for said office. A certificate of election was issued to appellee, and appellant contested the election by a proceeding instituted for that purpose in the circuit court of McHenry county. Upon a hearing the court found the appellee had received 249 votes and the appellant 245 for the office of mayor at said election, and adjudged the appellee duly elected to said office. This is an appeal from said judgment.

The court, on the hearing, by agreement of the parties, appointed three commissioners to canvass and report as to the number of votes appearing from the face of the ballots to have been cast for the respective candidates. The commissioners reported that it appeared from the ballots canvassed by them the appellant, Gill, received 250 votes, and the appellee, Shurtleff, 249 votes, but that said commissioners had not counted or canvassed certain votes marked "defective" or "objected to," and also returned as not counted one ballot cast in the second ward which had but a single diagonal mark in the square, and one ballot cast in the first ward on the back whereof appeared the following: "This ballot is objected to and sworn in.—T. J. P." The single diagonal stroke was in the square opposite the name of the appellant. The ballot was rejected from the count by the court, and the correctness of that ruling is not questioned. It was shown the words "this ballot is objected to and sworn in," had been endorsed on the other of such ballots by one of the election officers before it was put

in the box. It was declared to be a legal ballot for the appellee, and was so counted.

In the envelope marked by the election officers of the first ward "defective ballots," among other ballots about which no question is raised were two ballots, each properly marked with a cross, for the appellee, but on the back of each of such ballots appeared the following words: "This ballot objected to.—W. M. B." It was proven these words were marked on the ballots by the election officers before they were placed in the ballot-box, and that the voters who prepared and presented them in nowise participated in the endorsement of the writing on the ballots. The court ruled these ballots should be counted as legal ballots for the appellee. The ballot of one who is legally entitled to vote, and which he has prepared in conformity with the provisions of the statute and delivered to the judges of the election to be deposited in the box, should not be rejected from the count on the ground some one of the election officers, without the participation of the voter, made some endorsement on the ballot which might serve as a distinguishing mark. To rule otherwise would be to declare it to be within the power of the election officers to disfranchise a legal voter.

It was proven Fritz Burke, Albert Hance and M. D. Knight voted at the polls in the first ward, and that Burke was an unnaturalized alien and not entitled to vote, and evidence was produced on which the court held Hance and Knight were not residents of the ward and were not entitled to vote. Burke was produced as a witness, but testified he could not tell for whom he voted. Neither Hance nor Knight gave testimony. The appellant contended the right of each Hance, Burke and Knight to vote was challenged at the polls, and that the election officers decided to accept their ballots, but endorsed on each of these ballots the words "objected to" before the ballots were put in the box. He introduced a

witness, one of the challengers at the polls in the first ward, who testified he challenged said Hance, Burke and Knight, and offered to prove by the said witness that the ballot of each of said voters was endorsed by the election officers "objected to," before being placed in the box. The court ruled such testimony was not competent. It was proven one Philip Patnoid, who voted at such election, was an alien, and had filed his declaration of his intention to become a citizen but had not received a certificate of naturalization. He was not entitled to vote. (*Dorsey* v. *Brigham*, 177 Ill. 250.) The court ruled the votes cast by Hance, Burke, Knight and Patnoid were illegal, and that as it could not be ascertained for whom these votes were cast and counted, adjudged and ordered "two of said votes should and same is hereby deducted from the vote of T. H. Gill for mayor and likewise two votes from the vote of E. D. Shurtleff for mayor."

Appellant contends it was competent to prove the election officers endorsed on the ballots cast by said Hance, Burke and Knight the words "objected to" before such ballots were put in the box, and that had such proof been received it would have established those illegal voters voted for the appellee, for the ballots so endorsed were marked for the appellee and were counted for appellee by the court. It cannot be denied election officers are not warranted in so endorsing a ballot, and it may be conceded it would not be proper to seize upon an endorsement so improperly made upon a ballot as a means of identifying a ballot cast by a legal voter, for the purpose of disclosing for whom such voter cast his ballot. But in the case at bar it was held by the trial court the ballots cast by said Burke, Hance and Knight should not have been received into the ballot-box; that said persons had no right to have their ballots received or counted at the election; and we do not conceive that the rule which should be adhered to in order to preserve the secrecy of the ballot as to persons legally entitled to vote should

be invoked to shield one who has cast an illegal vote, or to operate to cause such illegal ballot to be received and counted as a legal ballot. There were three ballots counted for appellee in the first ward which were so marked "objected to." In the view of the court the appellant established that three illegal votes were cast in the first ward, and proof that the three ballots so cast by said illegal voters were each endorsed by the election officers "objected to," there being no others so marked in the box, would have clearly identified the ballots which said illegal voters unlawfully procured to be put in the box. Upon the plainest principles of right and justice ballots cast by persons not entitled to vote should be excluded from the count. The provision that election officers shall not make an endorsement on a ballot other than such as the statute specifies shall be made thereon, was devised in order to secure to each person entitled to vote the right to cast a ballot which could not be distinguished from the ballot cast by any other voter,—that is, a secret ballot. The protection of illegal voters is not within the reason or purpose of the provision, nor can the enforcement of the provision be demanded solely to the end a ballot unlawfully introduced into the box shall not be identified and distinguished from other lawful ballots, but shall, though illegal, be counted and given effect as a legal vote. If a ballot cast by a legal voter had been so improperly marked by the election officers the right of such voter to maintain the secrecy of his vote would have justified, and even demanded, that his ballot should not be identified by any such improper and illegal act. But an illegal voter who has unlawfully intruded his ballot into the ballot-box has no right of secrecy to be protected. "A person who votes without being qualified is a mere intruder and not entitled to the privileges which belong to legal voters." (McCrary on Elections, 492.) We think the court erred in excluding the evidence offered by the appellant.

It appeared from the evidence Jasper Havens, Daniel Green and Alfred Cady were lawful electors of the city and voted at said election. It was proven that Jasper Havens was an old man and quite feeble, and that he stated to the election officers that he was unable to mark his ballot, and that he was assisted by one of the judges in the preparation of his ballot upon his mere unsworn statement as to his disability. It was further proven said Daniel Green "was nearly blind" and asked the election officers to assist him in marking his ballot, and that he was so assisted by said officers upon his statement not verified by oath. It was further proven that said Alfred Cady, a blind man, was likewise assisted by the election officers to prepare his ballot without being required to make oath as to his disability. Paragraph 311 of chapter 46, entitled "Elections," (Hurd's Stat. 1897,) authorizes election officers to assist a voter in preparing his ticket if such voter shall declare, upon oath, that he can not read the English language or by reason of physical disability is unable to mark his ballot. The court ruled the provision that the existence of the alleged disability should be established by the oath of the voter was mandatory, and that the votes of Havens, Green and Cady should be excluded from the count.

The vital purpose of our ballot system is two-fold: First, to enable each voter to cast a secret ballot; and second, to require him to do so. The first of these purposes is for the protection of the elector; the last to preserve the purity of the ballot-box by depriving the corrupt voter (as far as possible) of the power or opportunity to satisfy others that he voted a particular ticket or for a certain candidate or measure. In view of the fact that in exceptional instances citizens who are lawfully entitled to vote might, by reason of the misfortune of illiteracy or of physical disability, be unable to prepare their tickets, it was found necessary to provide they might have the assistance of others in marking their

ballots. The privilege thus granted is liable to abuse, in that persons not standing in need of assistance might seek to avail themselves of it for the purpose of disclosing their ballots to others and establishing for whom or for what measure they had cast their ballots. This the statute designed to prevent by requiring that before any one should be assisted in marking his ballot he should, under a solemn oath lawfully administered, swear that the disability in question actually existed. In such cases the voter desires a privilege not accorded to voters generally, and one which tends, in a measure, to expose the ballot to the evils against which the enactment is directed. It is by no means unreasonable to grant such a privilege only on condition the voter shall show by his oath that his condition or situation is such as to entitle him to it. We regard the provision as mandatory.

But neither of these voters who were thus assisted testified for whom his ballot was cast. The court, over the objections of the appellant, permitted the election officers who, in their capacity as such officers, went into the booth with those voters and assisted them in marking their ballots, to testify how and for whom such ballots were marked. In this we think the court was in error. It was the privilege of each of the voters to decline to make known for whom he voted. (6 Am. & Eng. Ency. of Law,—1st ed.—p. 422, note 3.) The section of the statute under authority whereof the election officers went into the booth with the voters and there marked or assisted in marking their ballots, contains a provision expressly prohibiting such officials from disclosing the manner in which said ballots were marked. Though in this case the officers were not legally authorized to so go into the booth and assist in marking the ballots, the disability of the voters not having been established in the manner provided in the law, yet in so doing they were acting under color of their official authority, and obtained the information they were allowed to disclose in the course

of the exercise of an act which it was unlawful for them to perform except in virtue of power conferred upon them as such officials, and which they in good faith performed as an official duty.  These voters were lawfully entitled to vote at the election in question, and also entitled to all the benefits of the law designed to secure the entire secrecy of the ballot.  It is clear the oath was not omitted designedly by them, and likewise clear they did not simulate disability for the purpose of giving others an opportunity to see their ballots.  For whom or how they voted should not have been permitted to be divulged by those who obtained the information while officially assisting such voters to prepare a secret ballot.

The court ruled, from the evidence produced, that Ed. Keating, one of the voters at said election who testified he cast a ballot in the third ward for the appellee, had not resided in the ward for a period of thirty days next preceding the election, and rejected his ballot.  It is urged the evidence is insufficient to uphold the conclusion said voter was not a resident of the ward for the requisite period of time.  The same objection is preferred as to the evidence upon which the court decided that Albert Hance and M. D. Knight were not residents for the prescribed period of time in the first ward, where they voted.  The facts disclosed by the evidence as to the respective places of residence of each of them are in no instance as full as could be desired, and in one instance, at least, are very meagre.  As the case, in the view we have taken of it, must be reversed, we deem it better to make no decision as to the right of either of them to vote at such election, but to leave such questions to be decided upon the evidence to be produced at another hearing.

For the reasons indicated the judgment is reversed and the cause remanded.        *Reversed and remanded.*