INCORPORATED TOWN OF WESTVILLE v. INCORPORATED TOWN OF STILLWELL *et al.*

No. 229.    Opinion Filed November 9, 1909.

(105 Pac. 664.)

1.    COUNTIES—County Seat Election—Contest—Parties. This court acquires jurisdiction of a proceeding to contest the result of a county seat election under article 4, c. 31, pp. 378-387, Sess. Laws 1907-08, when the application therefor is filed within 30 days after such election has been held.

(a) Any additional necessary party may be made on proper application and showing after the expiration of such 30 days.

(b) It not being shown that Adair county as a political organization has any interest in this contest and no application having been made by the proper representatives of the county to be made a party hereto, this proceeding will be proceeded with without requiring it to be joined as a party thereto.

2.    COUNTIES—County Seat Election—Qualification of Voters— Mandatory Provisions. Section 12, art. 4, c. 31, p. 382, Sess. Laws 1907-08, providing that "every person desiring to vote at such special election * * * shall, before being given a ballot, permit the clerks to fill out an affidavit and * * *

shall subscribe and swear to said affidavit, * * *" is mandatory.

3. **COUNTIES—County Seat Election—Majority Determination.** For the purpose of determining the majority of the votes cast at a special election held to vote upon the removal or relocation of a county seat under the provisions of section 6, art. 17, Const. (sections 328 to 334 inclusive. Bunn's Ed.), and article 4, c. 31, pp. 378-387, Sess. Laws 1907-08, all the ballots cast on such question by the qualified electors of the county, making an honest though ineffectual effort to participate therein or have their ballots counted on the removal of the county seat, a majority of this number must be cast so as to be counted in favor of one of the contesting places before any town, city, or place shall be declared to be the county seat as a result of such election.

4. **SAME—"Vote Cast."** A ballot voted by a qualified elector without his having subscribed and sworn to the affidavit, as required by section 12. art. 4, c. 31, p. 382. Sess. Laws 1907-08, cannot be counted for any city, town, or place as a candidate for the county seat at such election.

(a) Such ballot, however, where the elector was qualified and acted in good faith, should be considered as a vote cast in estimating the number on which the required majority for the removal or relocation of the county seat is to be computed.

(b) The term, "vote cast," includes a ballot voted by a qualified elector, acting in good faith and failing to comply with the mandatory requirements imposed upon him in voting at such special election by section 12, supra, even though it precludes such vote from being counted for the town, city, or place for which he intended to vote.

5. **COUNTIES—County Seat Election—Failure to Elect—Second Election.** If by virtue of section 6, art. 17, Const., a majority of the votes cast at a special election shall not be received by or counted in favor of any city. town, or place voted for thereat, and there being more than two candidates for the location of the county seat at such election. the names of all except the two receiving the greatest number of votes shall be dropped, and the Governor shall in like time and manner cause to be held a second election at which only the said two towns shall be voted for.

(a) In the event none of the candidates at said first election received a majority of the votes cast thereat, there being only two candidates (cities, towns or places voted for thereat), the Governor shall then in like time and manner cause to be held a second election at which the said two towns shall be voted for, and the town receiving the requisite majority of the votes cast at the second election shall be the county seat.

(Syllabus by the Court.)

Original action to contest a county seat election by the Incorporated Town of Westville against the Incorporated Town of Stillwell and others.  Judgment rendered.

*Owen & Stone,* for plaintiff.  No copy of brief reached the reporter.

*R. Y. Nance* and *Arnold & Weston,* for defendants.— Citing: 6 A. & E. Enc. L. 325; *Bowser v. Smith,* 3 Mo. 45; *Daly v. Petroff,* 10 Phila. 389; *State Board of Freeholders,* 35 N. J. Law, 269; *Fowler v. State* (Tex.) 3 S. W. 255; *Tarbox v. Sughrue,* 36 Kan. 225; *Lowe v. Wheeler,* 2 Ellsw. El. Cas. 61; *Clark v. Robinson,* 88 Ill. 504; *Quinn v. Lattermore,* 120 N. C. 426; Pain on Elections, sec. 360.

WILLIAMS, J.  The questions essential to be decided for a proper disposition of this case are as follows:

(1)  Was the county of Adair under the act of April 17, 1908 (Sess. Laws 1907-08, p. 378, c. 31, art. 4), a necessary party to this proceeding in order for this court to acquire jurisdiction thereof?

(2)  Is section 12 of said act, which provides that "every person desiring to vote at such special election, after having passed  the challengers whose duties shall be the same as prescribed by law governing any general election, and being admitted to the room, shall, before being given a ballot, permit the clerks to fill out an affidavit and said intended voter shall subscribe and swear to said affidavit before the said special election commissioner, after which he shall be given a ticket and permitted to prepare same and deliver said ballot to said special election commissioner who shall, in the presence of said voter, deposit said ballot in the proper ballot box, and shall deposit the said affidavit in the box provided for that purpose," mandatory?

(3)  Not more than two places, towns, or cities, being candidates in the election for the location of the county seat, and neither one receiving a majority of the votes cast, under section 6, art. 17, Const., is it the duty of the Governor to cause to be held a second election at which said two towns shall again be voted for?

1. This is in its nature a summary proceeding to contest the result of a county seat election, exclusive original jurisdiction being conferred upon the Supreme Court over all controversies arising under the provisions of the laws governing such elections, and any city, town, or place being a candidate for such county seat in such election shall have a right to a hearing before this court upon application filed within 30 days after such election shall be held. The jurisdictional requirement is that the petition be filed within 30 days. Section 16, art. 4, c. 31, p. 385, Sess. Laws 1907-08. There is no requirement by the statute that the county as a political organization shall be made a party thereto. The contest is between the rival towns as candidates for the county seat. No showing that the county is a party in interest has been made here, and, if so, it could be made a party at any time after the filing of the application within due time, even after the expiration of the 30 days. The motion to dismiss is overruled.

2. In the case of the *City of Pond Creek et al. v. Haskell, Governor, et al.*, 21 Okla. 711, 97 Pac. 338, it was held that section 6, art. 17, Const., providing for the holding of elections for the relocation or removal of county seats of the different counties of the state, is self-executing, said section providing complete machinery for holding such elections, and that it was not necessary for the legislative enactments in order that the same might be enforced. The act of April 17, A. D. 1908, is therefore merely supplemental thereto. *State v. Scales*, 21 Okla. 683, 97 Pac. 584; *Reeves v. Anderson et al.*, 13 Wash. 17, 42 Pac. 625. What was the purpose, then of the Legislature providing this supplemental legislation relative to county seat elections? Such location by the constitutional convention was temporary, self-enforcing machinery being provided for the relocation thereof by the respective counties, as is clearly evidenced by the fact that it is provided that after April 1, A. D. 1909, county seats, except where the petition for the election was filed prior to October 1, 1908, should be removed only by two-thirds of the votes cast in the county at such election. Section 6, art. 17, Const. In addition to the requirements of the general election law (section 3, art. 5, c. 31, p. 341, Sess. Laws 1907-08),

before an elector is entitled to be given a ballot, by section 12, art. 4, c. 31, p. 382, Sess. Laws 1907-08, he must permit the clerks of the election to fill out an affidavit, and then he must subscribe and swear thereto. Additional precautions are also provided by said act, the following provisions being made: Section 6, that each town being a candidate thereat, is to select one person who, in addition to one to be appointed by the Governor, are to constitute the election board. Section 8, that the Governor is to appoint a special commissioner for each voting precinct. Section 9, that:

"No person shall be qualified and eligible to perform the duties of special election commissioner in any county, who shall be, or have been a resident of such county, or who shall be interested in any manner in the success of any city, town or place which is a candidate for any such county seat, or who shall be interested in any way or in any manner in any business proposition or institution located in any such city, town or place which is a candidate for the permanent location of said county seat.'"

And section 20, that:

"Any election officer who shall be appointed or commissioned under the provisions of this act or the laws of Oklahoma, and who shall knowingly and wilfully fail or refuse to perform the duties required of him shall be guilty of a felony."

The intention of the Legislature to impose the burdens, not only upon the election officers, but also upon the electors of additional duties, is apparent. This affidavit in form gives the age, race, and number of years that the elector has been a resident of the county and state, and the ward or precinct in which he then resided, and the length of time that he resided there prior to the time of the holding of the election, including his prior place of residence. It seems to not only constitute a species of registration, but also to contemplate subjecting each elector to the danger of the pains and penalties of perjury if he is not a qualified voter.

In the case of *Rampendahl v. Crump* (decided at this term), *ante*, p. 873, 105 Pac., 201, this court held:

"That part of section 4, c. 17, p. 233, Sess. Laws Okla. T. 1905, which provides that on leaving the booth the voter *shall* 'deliver the ballots to the inspector or judge temporarily acting as inspector, and such inspector shall forthwith, in the presence of

the voter and members of the election board and the watchers, deposit same in the respective ballot boxes,' is mandatory."

The following authorities were cited in support of that conclusion: *Attorney General v. May,* 99 Mich. 538, 58 N. W. 483, 25 L. R. A. 325; *Attorney General v. Stilson,* 108 Mich, 419, 66 N. W. 388; *Attorney General v. Kirby,* 120 Mich. 592, 79 N. W. 1009; *Vallier v. Brakke,* 7 S. D. 343, 64 N. W. 180; *State ex rel. Bradley et al. v. Gay,* 59 Minn. 6, 60 N. W. 676, 50 Am. St. Rep. 389; *Spurgin v. Thompson,* 37 Neb. 39, 55 N. W. 297; *Tebbe v. Smith,* 108 Cal. 101, 41 Pac. 454, 29 L. R. A. 673, 49 Am. St. Rep. 68; *Lay v. Parsons,* 104 Cal. 661, 38 Pac. 447; *Kirk v. Rhoads,* 46 Cal. 398; *Taylor v. Bleakley,* 55 Kan. 1, 39 Pac. 1045, 29 L. R. A. 683, 49 Am. St. Rep. 233; *Curran v. Clayton,* 86 Me. 42, 29 Atl. 930; *Whittam v. Zahorik,* 91 Iowa, 23, 59 N. W. 57, 51 Am. St. Rep. 317; *Parvin v. Winberg,* 130 Ind. 561, 30 N. E. 790, 15 L. R. A. 775, 30 Am. St. Rep. 254; *People ex rel. Nichols v. Board of County Canvassers,* 129 N. Y. 395, 29 N. E. 327, 14 L. R. A. 624. See, also, the following other authorities: *Wright v. State Board of Canvassers,* 76 S. C. 574, 57 S. E. 536; *Major v. Barker,* 99 Ky. 305, 35 S. W. 543; *Preston v. Price,* 70 S. W. 623, 24 Ky. Law Rep. 1090; *Gill v. Shurtleff,* 183 Ill. 440, 56 N. E. 164; *Patton v. Watkins,* 131 Ala. 387, 31 South. 93, 90 Am. St. Rep. 43; *Doerflinger v. Hilmantel,* 21 Wis. 574.

Mr. McCrary, in his work on Elections, section 724, says:

"The weight of authority is clearly in favor of holding the voter, on the one hand, to a strict performance of those things which the law requires of him, and, on the other, of relieving him from the consequence of a failure on the part of election officers to perform their duties according to the letter of the statute where such failure had not prevented a fair election. The justice of this rule is apparent, and it may be said to be the underlying principle to be applied in determining this question. The requirements of the law upon the elector are in the interest of pure elections, and should be complied with at least in substance, but to disfranchise the voter because of the mistakes or omissions of election officers would be to put him entirely at the mercy of political manipulators. The performance by the election officers of the duties imposed upon

them can be reasonably well secured by providing a penalty for failure so to do."

In this instance it does not appear that after the elector subscribed to the affidavit that he expressly or by fair implication asked the election officers to swear him. Had he done so, and the election officer had failed therein, that would probably place him in a different attitude as to having his vote counted.

But it is insisted that the subscribing to the affidavit in the presence of the election officer under the circumstances constitutes a swearing to it. This question seems to be covered by statute in this state. Section 3, art. 5, c. 31, p. 342, General Election Laws (Sess. Laws 1907-08), in providing for a challenged elector to subscribe and swear to an affidavit as to his qualifications, says:

"* * * He shall return and sign the same in the presence of the said precinct election board, and the clerk of said election is hereby empowered to administer such oath, and shall ask such elector in the presence of the other officers of said election, if he swears, (or affirms) that the statements contained in the affidavit are true. If such elector assents thereto, the inspector shall attest the same, in the blank space provided, and shall file such affidavit, and safely keep the same until it is delivered, as hereinafter provided, to the county election board."

Section 12, art. 4, c. 31, p. 382, Sess. Laws 1907-08, provides:

"Every person desiring to vote at such special election, after having passed the challengers whose duties shall be the same, as prescribed by law governing any general election, and being admitted to the room, shall, before being given a ballot," etc.

Said section 12 being supplemental to section 3, which prescribed how the oath shall be administered, the presumption is that the affidavit provided for in section 12 is to be sworn to in the same manner and form as that in said section 3. However, we do not intend to be understood as intimating that such provision as to the manner of being sworn is exclusive or mandatory. There must, however, be some act, either expressly or impliedly, done by the deponent in the presence and jurisdiction of the officer with authority to administer the oath, reasonably indicating that he understood the contents of the affidavit, and that he thereby intended to swear or affirm to the affidavit, and that the officer

reasonably so understood it. But in this case we are not called upon to decide this question, because it is not contended that the parties did anything more than subscribe their names to the affidavits; the officers not even attaching their jurats thereto either in the presence or absence of the affiants. It may be that had the deponent signed the affidavit in the presence of the officer and stood by and with knowledge that the officer placed his jurat thereon, acquiesced in such act, that would have been sufficient, but we reserve our decision on that question. Having reached the conclusion that said provision is mandatory, it follows that such ballots where the electors failed to swear to the affidavit cannot be counted for either of the candidates at such county seat election. *Rampendahl v. Crump, supra.*

In view of the conclusion hereinafter reached, however, it is not necessary to determine as to whether or not the findings as to fact and law of the referee as to the Salem precinct are correct; for, when the ballots that were cast where the affidavits were not properly sworn to are eliminated, that reduces the vote counted in favor of Stilwell to such an extent that, even though we were to count for Stilwell the votes claimed by it at Salem precinct, still Westville would have a majority of the *counted* votes.

But the question arises as to whether or not Westville has a majority of the votes cast. In the case of the *Town of Eufaula v. Gibson et al.,* 22 Okla: 507, 98 Pac. 570, this court said:

"If the law requires the elimination in computing the whole number on which the majority is to be computed of the 87 ballots found by the referee to be mutilated, Checotah, having received 1,664 votes, would have a majority of the votes cast. If, however, we hold that the term 'votes cast' properly includes not only the votes counted, but also the ballots cast by the electors where valid and free from fraud, and which manifest an honest effort on the part of the voter to participate in the election, but which were so mutilated that they were unintelligible and for this reason could not be counted for either place, then Checotah would not have received a majority."

On page 579 the court further said:

"So, in our judgment, the total to be considered, the whole number of votes cast upon which the majority is estimated, should be made up of those votes which are counted for the different propositions and those which have been cast by the qualified electors of the county making an honest, though unintelligible effort to participate in the making of the choice."

In this case there is neither any contention that any of the electors failing to swear to the affidavit were not otherwise qualified to vote at such election, nor that they did not make an honest though ineffectual effort to participate therein, so as to have their votes counted.

As to Salem precinct, there is no contention that any parties voted there other than qualified electors, though there may have been such acts of violence and intimidation by certain parties as to induce the referee to find that such election was void, yet there appears to have been no corruption on the part of · the voters. Whilst acts of violence and intimidation by a few parties might be sufficient ground not to count the votes of · that precinct, it seems by the rule laid down in the Eufaula Case that they would be computed as votes *cast*. And neither the. number of votes *counted* for Stilwell nor Westville constituting a majority of the votes *cast* at such election, no town has received the requisite majority of all the votes *cast* at such election.

Only two towns having been voted for by the electors in such election, the question arises as to whether or not, under the provisions of the Constitution, the election fails, and Westville, on account of a hiatus in the law, remains the county seat of Adair county, or another election shall be held for the purpose of the permanent location of such county seat. Section 6 of article 17 of the Constitution provides:

"If a majority of the votes cast in the county at such county seat election shall be in favor of any town, such town shall thereafter be the county seat: * * * but, if more than two towns are voted for and no town receive the requisite proportion of all the votes cast, then all names of towns voted for on said ballot, except the two receiving the greatest number of votes, shall be dropped; and the Governor shall, in like time and manner,

cause to be called and held a second election, at which only two towns which received the greatest number of votes cast at the first election shall be voted for; and the town receiving the requisite proportion of the votes at the second election shall be the county seat."

Neither of said two towns having received a majority of all the votes *cast*, and, there not being more than two towns voted for at said election, it follows that, under the foregoing provision, no names of towns are to be dropped at the second election. The said two towns being the only candidates in that election and being the two towns that received the greatest number of votes cast, we conclude that it is the duty of the Governor in like time and manner to cause to be held a second election at which only the towns of Westville and Stilwell, which received the greatest number of votes cast at such election, shall be voted for, and the town receiving the greatest number of votes cast at such election, to be declared to be the county seat.

Turner, J., concurs; Kane, C. J., concurs in the conclusion reached; Dunn and Hayes, JJ., not participating.