(No. 12949.—Judgment affirmed.)

JAMES E. MCCREERY, Appellant, *vs.* W. G. BURNSMIER, Appellee.

*Opinion filed April 21, 1920.*

1. ELECTIONS—*general rule as to whether name of candidate must be correctly spelled by voter.* While it is not essential that the voter correctly spell the name of the candidate he may write on the ballot, yet in order that it be counted there must be such relation between the appearance or sound of the name written and that of a candidate as to at once suggest that the name written was actually intended for that candidate, and that suggestion must come from an inspection of the ballot.

2. SAME—*perfect ballot for one eligible to office is conclusive of voter's intent—initials.* Although a middle initial of a candidate's name is not written correctly the ballot will ordinarily be counted for the candidate if there is no other person in the district having the same name and initial used by the voter, but where a ballot is actually and definitely marked for some person eligible to the office, who, although not a candidate, lives in the same district in which the candidates are to be elected, the intention of the voter must be determined by the ballot as cast and not by extraneous evidence as to what his intentions were when he cast his ballot.

3. SAME—*a voter must make affidavit before being assisted to vote.* The statutory requirement that a voter must make affidavit that he is unable to prepare his ballot before he can be assisted in voting is mandatory.

4. SAME—*circumstantial evidence may prove how a voter voted.* How a voter voted may be proved by circumstantial evidence.

5. SAME—*when numbers on ballots are not distinguishing marks.* While election judges should refrain from making any marks on the ballots, their action in writing numbers on the ballots when count-

ing them after they have been voted, to denote the number of straight ballots cast in the ward, does not render the ballots illegal.

6. SAME—*initials of judge repeated on a ballot are not distinguishing marks.* The fact that an election judge, by reason of nervousness, writes the first two initials of his name on the back of a ballot and then writes above them all three of his initials correctly, should not be regarded as distinguishing the ballot nor as otherwise invalidating it.

7. SAME—*when ballot with name of a candidate written upside down is not correctly voted.* Where a voter votes for a candidate by writing the name in the proper place on the ballot but writes it upside down, so that the cross in the printed square is at the right of the name of the candidate as written, the ballot cannot be counted for the candidate, as the rule is peremptory that the cross should be to the left of the name and not to the right.

8. SAME—*witnesses cannot give conclusions as to whether it was generally known who were candidates.* In an election contest, witnesses should not be permitted to give their conclusions as to what was the general understanding of the people in the election district as to who were the candidates for the office contested.

9. SAME—*ballots must bear initials of the election judge.* Under the Election law no ballots can be counted that do not bear the initials of the election judge.

10. SAME—*when candidate does not run on two tickets.* Where a candidate's name is not printed on the ballots but is written in by the voters, some in the proper blank under one ticket and some under another, where the names of candidates nominated were not printed because withdrawn, the ballots are properly voted, as the fact that the candidate is voted for on two tickets is the result of the voters' choice and not of the candidate running on two party tickets.

11. PRACTICE—*an appellee may assign cross-errors.* Under section 107 of the Practice act an appellee may assign cross-errors without excepting to or appealing from the judgment or decree or any part thereof, where the decree or judgment appealed from is not severable.

APPEAL from the Circuit Court of Mason county; the Hon. GUY R. WILLIAMS, Judge, presiding.

A. M. FITZGERALD, and W. A. COVEY, for appellant.

W. E. STONE, (HEYL & HEYL, of counsel,) for appellee.

Mr. Justice Duncan delivered the opinion of the court:

James E. McCreery filed a petition in the circuit court of Mason county at the June term, 1919, to contest the election of appellee, W. G. Burnsmier, for the office of mayor of Mason City. The election was held in that city April 15, 1919. The election board declared that appellee had received 360 legal votes at the election for said office and that appellant had received therefor 356 legal votes. On the hearing of the contest the circuit court found there were only 341 legal votes cast for appellant for said office at the election and 345 legal votes for appellee and entered its judgment that appellee was duly elected to said office. McCreery has prosecuted this appeal from that judgment and appellee has assigned cross-errors.

The official ballot at the election contained the headings for three party tickets. The ticket headed "Peoples" appeared first with a full set of candidates, appellee's name being printed as a candidate for mayor. The ticket headed "Citizens" appeared next or in the center. No names were printed on this ticket, but blank spaces with a square printed to the left of each space appeared on this ticket at the proper places for writing in the names of candidates. The ticket headed "Independent" appeared last or to the extreme right of the ballot. The only name printed on this ticket, except on that for the first ward, was the name of Thomas K. Wible, a candidate for city clerk. On the ballot for the first ward the name of J. L. Robertson was printed on the Independent ticket as a candidate for alderman. There were blank spaces left on this ticket with a printed square to the left of each space, so that voters might write in the names of their candidates for all other offices, including that of mayor. A party circle was printed at the left of each party appellation in the usual manner, and the ballot as thus printed was certified to be the official ballot to be voted at that election. The official ballot was so printed

and certified apparently for the reason that candidates on the Peoples ticket were nominated by that party and no candidate on that ticket withdrew. A full ticket was also nominated for that election by the Citizens party, but all of the candidates later withdrew, Dr. Cargill being nominated on that ticket for mayor. Later an Independent ticket was nominated by petition, Dr. Cargill being nominated thereon for mayor. All the candidates on that ticket withdrew except Thomas K. Wible for clerk and J. L. Robertson for alderman in the first ward. On Thursday and Saturday evenings, after Dr. Cargill had twice withdrawn from the race, appellant announced himself as a candidate for mayor on the Independent ticket at the only picture show in Mason City by means of pictures of himself and words announcing his candidacy thrown on the screen. The picture shows were largely attended on those evenings. On Monday previous to the election printed dodgers were delivered at all the houses of the city both in the residence and business sections, with these words printed thereon: "Vote for James E. McCreery for mayor, Tuesday, April 15, 1919.—Write the name on the Independent ticket and don't forget the cross." There was a printed square and a cross therein to the left of appellant's name on the dodgers. His candidacy for mayor was by these means well advertised all over the city. There were no other candidates for election for mayor on election day other than appellant and appellee.

On the trial of the election contest a stipulation was made by the parties in substance as follows: The total ballots voted were 807, 33 thereof showing no votes or attempted votes for either appellant or appellee. Of such ballots 47 others were invalid and should not be counted for either party, and 259 of such ballots were properly counted for appellant and 343 for appellee. The stipulation further provided that it should not preclude appellee from thereafter insisting that all ballots for appellant on the Independent ticket should not be counted for him, and that nothing

in the stipulation should be construed as limiting the court's·
right to deduct from the total votes of either appellant or
appellee such votes as the court may find from the oral evi-
dence to be illegal. The court found on the trial that there
were 23 other ballots, including six ballots cast for appel-
lee by absent voters, that did not have the initials of an
election judge indorsed thereon, and for that reason they
were not counted for either party. Of the 47 ballots stipu-
lated by the parties to be invalid, 43 of them were ren-
dered so by the failure of the voters to make a cross in
the proper place to entitle their ballots to be counted, and
these ballots have been properly certified to this court for
its inspection, although there is no contest here as to them.
Two others of the 47 ballots, referred to in the stipula-
tion as exhibits 34 and 101, are not otherwise referred to
in this record. The remaining two of the 47 are known
as exhibits 74 and 161. Of the remaining ballots, to all
of which objections were made, the court found that 86
were properly marked for appellant, which brought his total
up to 345 votes. Later four votes were deducted from that
number on consideration of the oral evidence. There were
three ballots properly marked for appellee, which brought
his total vote as found by the court to 346, and one vote
was later deducted from such total on the oral evidence
heard by the court.

Appellant contends that ballots marked exhibits 74 and
161, which are original ballots properly certified to this
court for inspection in a bunch of 99 others, should have
been counted for him. Exhibit 74 is a ballot properly in-
dorsed by the election judge and the voter wrote the name
James Cheery in the blank space for mayor on the Independ-
ent ticket and put a proper cross in the circle. Exhibit 161
was properly indorsed by the election judge and is a vote
for J. A. or J. W. McNagry on the Independent ticket,
with the proper cross in the square to the left of the name.
These two ballots were clearly not cast for appellant and

are two of the 47 ballots that he prudently stipulated were ballots that could not be counted for either party, as already stated in the preceding paragraph of this opinion, and for that reason his contention cannot be further considered. He is bound by that stipulation.

Exhibit 91 is an original ballot properly marked and voted for G. or J. McMagr on the Independent ticket. It is not clear whether the initial of the name is G or J, but conceding that the vote is for J. McMagr it cannot be legally counted for appellant under the doctrine of *idem sonans* or any other rule. The two names, McMagr and McCreery, do not closely resemble each other in appearance when written or in sound when pronounced. The name McMagr cannot be properly construed as a contraction for the name McCreery. While it is not essential that the voter correctly spell the name of the candidate he may write on the ballot, yet in order that it be counted for a candidate there must be some relation between the appearance or sound of the name written and that of a candidate so as to at once suggest that the name written was actually intended for that of the candidate, and that suggestion must come from an inspection of the ballot. Although appellant's name is commonly and variously written, and pronounced as if written McCreery, McGreary, McGeary and McQuarry, the court did not err in holding that this ballot should not be counted for appellant, under the rules announced in *Behrensmeyer* v. *Kreitz,* 135 Ill. 591, *Clark* v. *Robinson,* 88 id. 498, and *Constant* v. *Shockey,* 259 id. 496.

Exhibits 83, 88, 128, 134, 148, 150, 154, 190, 200 and 204 are original ballots properly marked and clearly intended as votes for J. A. McCreery for mayor. Two of these votes were marked on the Citizens ticket and the others on the Independent ticket. Exhibit 48 is an original ballot that was properly and plainly marked and voted for J. R. McCreery on the Independent ticket. The only question, in the first instance, as to these ballots was whether

or not, under the evidence, a ballot marked for J. A. Mc-
Creery or J. R. McCreery should be counted for appellant.
The court properly refused to count them for appellant. ·

Where the ballots are actually and definitely marked for
some person eligible to the office, living in the same dis-
trict in which the candidates are to be elected, although the
person so voted for is not a candidate, the intention of
the voter must be determined by the ballot as cast and not
by extraneous evidence of the voter as to what his inten-
tions were when he cast his vote. In other words, if a
voter plainly marks his ballot for John Jones, who lives in
the district wherein James Jones is a candidate for office,
and John Jones is eligible to such office, the ballot cannot
be counted for James Jones although John Jones was not
a candidate at that election, and the voter cannot be heard
to say in such case that he intended to vote for James Jones.
The rule is that if the ballot is found to be perfect and
expresses a certain intent by the elector it must be accepted
as the exclusive evidence of his intent. *Wimmer* v. *Eaton,*
72 Iowa, 374; *State* v. *Steinborn,* 92 Wis. 605; Cooley's
Const. Lim. secs. 610, 611.

The oral proof in this record shows that at the time
the election was held there were just four male persons of
the name of McCreery living within the limits of Mason
City who were eligible to the office of mayor. The oldest
and most prominent member of the family was John A.
McCreery, father of two of the other McCreerys,—J. R.
McCreery and Harry McCreery. John A. McCreery had
been in business in Mason City for a number of years, had
served as an alderman and mayor thereof, and as a mem-
ber of the board of education for twelve or fourteen years.
In the spring of 1919, shortly before the election in ques-
tion, he had been re-elected as a member of the board of
education by having his name written on the ballot by the
voters. He was commonly known as J. A. McCreery and
conducted his business under that name. The appellant is a

brother of John A. McCreery and operated his business un-
der the name of the corporation by which he was employed.
After Dr. Cargill had withdrawn from the race, J. A. Mc-
Creery and J. R. McCreery were both frequently talked of
as candidates for the office in question and many voters had
expressed their intention of voting for them for mayor at
the election, and some voters were heard to say on election
day that they intended to vote for John McCreery. J. R.
McCreery had been asked to become a candidate for mayor
at the election in question. He is a well known business
man in that city and is commonly known as J. R. Mc-
Creery and does business in that name and had himself been
elected to office in Mason City before that election. The
record further shows that two ballots were actually cast at
said election for John McCreery, the voter writing the name
as John or Jno. McCreery.

While James E. McCreery was also a prominent man
in said city and well known, considering the fact that he
only came out as a candidate for said office on Thursday
before the election and was not talked of as a candidate
before that time, we think the rule should be adhered to
in this case that the votes cast for J. A. McCreery should
be counted as votes for John A. McCreery and not for ap-
pellant, as those votes were perfectly marked for him and
by the name that he was commonly known. It is true that
ordinarily a middle initial is not to be regarded as part of
the name, and that a ballot may be counted for a candidate
where his first name is not written on the ballot but his
initials instead thereof. It is also a rule that where a mid-
dle initial of the candidate's name is not written correctly
the ballot will ordinarily be counted for the candidate where
there is no other person in the same district of the identical
same name and initial as used by the voter. So, also, in
certain instances where the voter writes the name imper-
fectly, parol evidence may be received to explain the intent;
but where, as in this case, the name is perfectly written

by initials, and the middle initial is required to be considered, under the evidence, to ascertain for whom the voter actually voted and intended to vote, we think it would be a dangerous precedent to establish the rule that the voter intended to do otherwise than what he actually did do or to allow him to testify that he did not intend to do what he actually did do. No one in this case testified or was offered for the purpose of testifying that he cast any one of said ballots with the intention of voting for appellant or of voting for J. A. McCreery, and it is clear that under the only legitimate evidence in the case they should not be counted for appellant. The decree recites that the ballot cast for J. R. McCreery was counted for appellant, but this is clearly recognized as error by both parties in their briefs. The same rule, however, applies to that ballot as to the ballots cast for J. A. McCreery.

The votes of Jackson Roundtree and Mrs. W. W. Williams were properly deducted from the count for appellant under the oral evidence. Both were assisted in preparing their ballots by the election judges and neither of them made oath or affidavit that they were physically or otherwise unable to prepare their ballots. Before assistance can be rendered to voters our statute requires such oath or affidavit, and it is mandatory. (*Gill* v. *Shurtleff*, 183 Ill. 440.) Mrs. Williams testified that she voted for appellant, and the circumstantial evidence in the record justified the court's conclusion that Roundtree voted likewise. He was brought to the polls by the party workers of appellant, and it was publicly announced when he arrived at the voting place that he wanted to vote the Independent ticket and he made no reply disputing that statement. It may be proved how a voter voted by circumstantial evidence. *Sorenson* v. *Sorenson*, 189 Ill. 179; *Rexroth* v. *Schein*, 206 id. 80.

On the oral evidence the court deducted the vote of Ruth Slusser, a minor, from appellee's total of 346 votes, and also deducted the votes of Elza Fletcher and Mattie

Vaughn, two other minors, from the votes of appellant. The action of the court in regard to these votes is not questioned.

Appellant's contention that the ballots numbered 13, 28 and 57 should not have been counted for appellee is without merit. On No. 57 the figures "37" were written on the face of the ballot, and on the face of ballot No. 13 the figures "43" were written. The evidence plainly discloses that those numbers were written on the ballots by the election officials while they were counting them and were not written there before or at the time the voters voted those ballots. The only objection to the ballots is that they were distinguished by such figures. They are not distinguishing marks within the meaning of our statute, but were simply marks placed there by the judges denoting the number of straight ballots cast in the ward, and while election judges ought to know better and refrain from making any marks on a ballot, their illegal action in that particular does not render the ballot illegal. (*Perkins* v. *Bertrand,* 192 Ill. 58; *Rexroth* v. *Schein, supra.*) Neither did the court err in counting ballot No. 28 for appellee. On that ballot the election judge, by reason of his nervousness and age, repeated the first two initials of his name on the back of the ballot by first writing J. W. and then writing above them J. W. T., the last three being his correct initials and all his initials. This should not be regarded as distinguishing the ballot nor as otherwise invalidating it. *Perkins* v. *Bertrand, supra; Gill* v. *Shurtleff, supra.*

Ballot No. 37 has the name of James E. McCreery very poorly and almost illegibly written in the proper place for mayor with the printed square to its right and properly crossed, but the name is upside down, which placed the cross on the wrong side. The name is illegible unless it be read with the head of the ballot down to the reader. We think the court properly refused to count this ballot. Besides serving as a distinguishing mark, the writing of the name upside down throws the cross to the right of the name

when it is properly read. The rule is peremptory that the cross should be to the left of the name and in a square and not to the right. That rule is not complied with in this instance. It may have been an innocent mistake of the voter, by reason of bad sight or by reason of extreme carelessness or indifference. The requirements of the law are simple, and we cannot recognize this ballot under the provisions of our statute.

Evidence as to what was the general understanding of the people of Mason City as to who were the candidates for mayor was properly excluded by the court. The witnesses were permitted to detail conversations and declarations of citizens generally on that subject. That was the utmost that appellant could expect in the way of evidence on that subject. The mere conclusions of witnesses on that subject were highly improper.

The rule prevails in this State by reason of section 107 of the Practice act that an appellee may assign cross-errors in an appeal case without excepting to or appealing from the judgment or decree or any part thereof, where the decree or judgment appealed from is not severable. (*Oliver* v. *Wilhite,* 201 Ill. 552.). But a consideration of the cross-errors in this case leads to the conclusion that the trial court was right in rejecting the six absent electors' ballots which were deposited in the ballot-box without the judge's initials indorsed on them. The Absent Electors Ballot law of 1917 does not differ in that respect from the Australian Ballot law. No ballots can be counted, under our present Election law, that do not bear the initials of the election judge. *Laird* v. *Williams,* 281 Ill. 233; Laws of 1917, sec. 9, p. 438.

Appellee's contention that the votes for appellant cast on both tickets, the Independent and the Citizens, cannot be counted for him, is without merit. A voter at that election had a right to vote for whomsoever he pleased and had a right to write the name of his choice on any one of the

three tickets and have the same counted. (*People* v. *Czarnecki*, 266 Ill. 372.) Appellant's name was not printed on any one of the tickets and could not be considered as violating the statute prohibiting a candidate from running on two party tickets. The fact that he was voted for on two tickets was the result of the voters' choice by reason of the fact that appellant's name was printed on no ticket, and was not a result of appellant running on two tickets in violation of the statute.

All the other errors assigned by appellee are without merit and are upon questions well settled. No useful purpose can be served in further considering them.

The judgment of the circuit court is correct and it is affirmed.

*Judgment affirmed.*

Mr. Justice Stone took no part in this decision.

---

(No. 13193.—Reversed in part and remanded.)
Lawrence Edward McNamara *et al.* Appellants, *vs.*
Alice McNamara *et al.* Appellees.

*Opinion filed April 21, 1920.*

1. Wills—*devise to a child who is dead is not void.* Under section 11 of the Statute of Descent a devise to a deceased child goes to the heirs of such child, and a clause of a will giving a share to a deceased daughter, among other children named, "or to their children or legal heirs in case of the death of either," is not void because the daughter was dead at the time of making the will.