JOHN O. GRUBB, Respondent, v. JAKE DEWING, Appellant.

(187 N. W. 157.)

**Elections — where election judge accompanied to booth voters who had de-clared no disability, such votes cannot be held legal on contest.**

Section 988 of the Compiled Laws of 1913, which provides for rendering assistance to voters who declare to the judges of election that they cannot read or that owing to blindness or other physical disability they are unable to mark their ballots, is mandatory, and where one judge of election is shown to have accompanied a number of voters to the election booth where no such disability appeared or was declared, such votes, upon contest, cannot be regarded as legal.

Opinion filed Feb. 14, 1922.

Judgment rendered by the trial court of Burke county, *Cooley*, Special J.

Affirmed.

*McGee & Goss,* for appellant.

*Bangs & Robbins,* for respondent.

BIRDZELL, J. Election contest. This is an appeal from a judgment rendered in favor of the contestant. It involves the office of county commissioner of Burke county in the Third commissioner district. The contest was instituted at the same time as the Drinkwater-Nelson contest for the office of Sheriff, decided concurrently herewith, post (187 N. W. 152), and they were tried together. The facts with reference to the election and institution of the contest are sufficiently stated in the opinion in that case, and need not be restated here. The evidence taken is applicable to both contests, except that some of it relates to precincts not within the commissioner district, and some relates to precincts involved only in this contest.

On the face of the returns Dewing received 536 votes and Grubb 518 votes for the office of county commissioner. Upon a recount in this proceeding it appeared that the plaintiff had received 518 votes and the defendant 529; but it was found by the court that 2 votes had been

counted for the defendant which were cast by persons who were not cit-izens of the United States, and that 12 votes were counted for the de-fendant which had been cast by women who were illegally assisted by a judge of the election. Subtracting the 14 votes thus found to have been illegally cast and counted for the defendant, the result was adjudged to be 518 for the contestant plaintiff and 515 for the contestee defendant.

In so far as the assignments of error upon this appeal involve the questions presented and decided in the Drinkwater-Nelson contest, that opinion is adopted as applicable hereto, and in so far as assignments are presented that are not controlled by the decision in that case they will be separately considered. The votes excluded and subtracted from Dewing on the grounds of alienage are those of Mary Skalicky and Muriel By-knonen. These were not legal votes, and they must be disposed of as in the Drinkwater-Nelson contest. This case turns upon the propriety of excluding a number of votes in Colville precinct on the ground of the failure to observe the secrecy of the ballot through assistance render-ed to voters by one election judge, where no disability was declared or shown.

As to the circumstances in which assistance was rendered, Bennie Breeding, a clerk at the election, testified that on one occasion both judges of election went into the booth with a woman, and that one of the judges, Ole Sletvig, went into the booth with approximately half of the women that voted in the precinct that day; that he did not think that the women had first declared that they could not read nor mark their ballots, except the old lady who was assisted by both judges; that he did not hear any of them declare that they were unable to mark their bal-lots; that the provisions of the law with reference to assistance to voters were read in the morning on the opening of the polls; and that the ladies who had assistance asked Mr. Sletvig to go to the booth with them. Sam O. Enget, a judge in the same precinct, testified that there was just one lady who voted with the assistance of both judges and that she had stated to the board that she could not read; that none of the other ladies declared or told the judges that they could not read, or that they were physically unable to mark their ballots; that Sletvig, the other judge, assisted about half of the women voters; that these women asked Sletvig to go into the booth with them that he (Enget) had remarked during the morning that this should not be done; that Sletvig continued to go to the booth with the ladies that called for him; that there was no

particular discussion between him and the other judge about it; that the other judge had stated to him that he might come in at any time he wanted to; that he had asked him to come in, and he (Enget) did not refuse to go into the booth with any woman who had stated that she was unable to mark her ballot. This is the substance of all of the testimony given upon this subject. It shows clearly that assistance was rendered to approximately half the women who cast votes in Colville precinct, and that in only one instance was there any declaration by the voter of her inability to mark the ballot, in which instance both judges rendered assistance as provided by law. Section 988 of the Compiled Laws of 1913. Can these ballots be legally counted in this contest for the candidate for whom they were cast?

Section 129 of the state Constitution provides that all elections by the people shall be by secret ballot, subject to such regulations as shall be provided by law. The necessity for secrecy in connection with the operation of the Australian ballot system is so generally recognized that the reasons for it need not be discussed. Suffice it to say that it serves the double purpose of protecting the voter in the independent exercise of his franchise, and it gives one of the best assurances against sundry fraudulent practices that designing corruptionists have invented. To the end that secrecy may be observed, the Legislature, in carrying out the constitutional policy, has provided that not more than one person shall be permitted to occupy an election booth at the same time. Section 986, Compiled Laws of 1913. That the booth shall be protected by a guard rail, and that not more than one elector for each booth shall be permitted within the railing at one time. Section 990, Compiled Laws of 1913. That no person shall show his ballot, after it is marked, to any person in such a way as to reveal the contents thereof, or to any person for whom he has marked his vote, and that no elector shall place any mark upon his ballot by which it may afterwards be identified as the one voted by him. Section 1042, Compiled Laws 1913. It is the manifest aim of all these provisions to guarantee absolute secrecy. They not only prevent others from ascertaining by observation how the elector votes while he is engaged in the process, but they prohibit the exhibition of the ballot by the voter himself to any person. The only instance of a departure from this that the law recognizes is where a voter declares to the judges of the election, or when it appears to the judges that he cannot read, or that by blindness or other physical disability he is unable to mark his ballot,

two of the election officers shall, upon request from the voter, render assistance, but that such officers shall give no information regarding the same. In their discretion, the judges may require the voter to declare his disability under oath. Section 988, Compiled Laws of 1913. Where election laws require a declaration of disability as a condition of receiving assistance from election officers, such declaration is regarded as a mandatory requirement, the failure to observe which results in an illegal vote. Tebbe v. Smith, 108 Cal. 101, 41 Pac. 454, 29 L. R. A. 673, 49 Am. St. Rep. 68; Huston v. Anderson, 145 Cal. 320, 78 Pac. 629; Gill v. Shurtleff, 183 Ill. 440, 56 N. E. 164; McCreery v. Burnsmier, 293 Ill. 43, 127 N. E. 171; Major v. Barker, 99 Ky. 305, 35 S. W. 543; Pace v. Reed, 138 Ky. 605, 128 S. W. 891; Atty. Gen. v. McQuade, 94 Mich. 439, 53 N. W. 944; Atty. Gen. v. May, 99 Mich. 538, 58 N. W. 483, 25 L. R. A. 325; State ex rel. Braley v. Gay, 59 Minn. 6, 60 N. W. 676, 50 Am. St. Rep. 389; McEwen v. Prince, 125 Minn. 417, 147 N. W. 275; Board v. Dill, 26 Okl. 104, 110 Pac. 1107, 29 L. R. A. (N. S.) 1170, Ann. Cas. 1912B, 101. In our opinion there can be no distinction in principle between a statute which permits assistance upon an ordinary parol declaration of disability and one which requires a sworn declaration. There is only a formal difference between the two. Both require that the fact which furnishes occasion for the rendition of assistance shall be first made to appear. In their essence they are the same. A judge of the election has no more right to accompany a voter to the booth where the fact of disability does not appear than has any other person, and if a judge of the election is free to observe the ballot or watch the voting of any person who calls him, or is willing that he shall look on, there is no reason why others may not have the same privilege. Thus the secrecy of the ballot might be destroyed or become dependent upon the whim of the individual voter. Manifestly, this policy would contravene the express statutory prohibition, applicable to the voter himself, against exhibiting the ballot. There is a distinct species of corruption that this provision is designed to prevent. The voter cannot thus exhibit proof to others that he has voted in a particular way. We are of the opinion that the only construction which can be placed upon § 988 of the Compiled Laws of 1913, regarding assistance to voters, which shall make it consistent with the constitutional requirement of secrecy and with the other legislative enactments looking toward the same end, is that it is mandatory in character. Being mandatory, it follows that the failure to ob-

serve the requirements results in an illegal ballot. In the instance of Colville precinct, the number of such ballots cast is at least the number found by the trial court.

Where mandatory requirements are not observed, it will necessarily result in individual cases that the will of the electors may not be effectively carried out, and this, even though there be no fraud or no great blame attaching to any person. However unfortunate this may be in a particular case, it is unimportant compared to the safeguarding of the ballot against insidious attacks to which it would be subject if mandatory requirements could be safely ignored. Such consequences are unavoidable in the enforcement of mandatory statutes; but the apparent harshness of the result is not as great here as in some other situations that occasionally arise. For instance, the mere failure of the election officer to place his initials on the back of the official ballot renders the vote absolutely void by express statutory declaration. Section 1006, Compiled Laws of 1913; Miller v. Schallern, 8 N. D. 395, 79 N. W. 865. This is an omission that the voter is in no wise responsible for; yet, in the interest of fair elections in the long run, ballots not so marked must be disregarded. It is for similar reasons that votes must be disregarded where the voters who presumably do not belong to the excepted class and an officer of the election have disregarded wholesome requirements intended to preserve the purity of the ballot.

It follows from what has been said that the judgment is right, and it is affirmed.

CHRISTIANSON, and ROBINSON, JJ., concur.

BRONSON, J., concurs in result.

GRACE, C. J. (concurring in part and dissenting in part). For the reasons sated in my opinion in the case of Drinkwater v. Nelson, post., 187 N. W. 152, I am fully convinced that the judgment in this case should be reversed, and the contest proceedings dismissed.

The discussion which is set forth in my opinion of Drinkwater v. Nelson is a sufficient discussion of the questions of law and fact which have arisen in this case.