ED DRINKWATER, Respondent, v. ANDREW NELSON, Appellant.

(187 N. W. 152.)

**Elections — evidence held to show that notice of contest filed within twenty days after canvass.**

1. The evidence sufficiently shows that the notice of contest was served within twenty days after the canvassing of the votes.

**Elections — ballots held admissible under ordinary rules of evidence, though election officers and custodians may have omitted some duty.**

2. Chap. 121 of the Session Laws of 1919 which provides for the return and care of the ballots cast at an election for use in case of contest is construed and *held* to render the ballots admissible under ordinary rules of evidence in an election contest though election officers and the county judge, who is made the custodian may have omitted some duty.

**Elections — trial judge's admission of ballots objected to as having been tampered with will not be reversed, unless clearly erroneous.**

3. Where the admissibility of ballots is objected to on the ground that the bundles show that the seals are broken and that they bear other evidences of having been disturbed, the trial court having an opportunity to inspect the bundles is in a more advantageous position to determine whether they had been tampered with than is an apellate court, and its ruling will not be reversed unless clearly erroneous.

**Evidence — opinion evidence as to likelihood of error in counting ballots is inadmissible.**

4. Opinion evidence as to the likehood of error in the counting of ballots by election officials is inadmissible.

**Elections — evidence held to support findings of a difference of four votes in favor of contestant.**

5. The evidence in regard to individual votes excluded on the ground of nonresidence and alienage is examined and it is *held* to support the findings of the trial court to the extent of a difference of at least four votes in favor of the contestant.

**Elections — where two contests are tried together, evidence in one not relating to issues in the other may not be considered in such other, and denial of motion to amend answer to broaden issues not error.**

6. Where two election contests are tried together, partly upon the same evidence, the separate notice of contest and the answers determine the issues, and evidence admitted in one contest which has no relation to the issues presented in the other cannot be considered in connection with the latter, and the denial of a motion made at the close of the contestant's case to amend the answer so as to broaden the issues is not error.

Opinion filed Feb. 14, 1922.   Rehearing denied Mar. 11, 1922.

Appeal from the District court of Burke county, *Cooley,* Special J.

*McGee* & *Goss,* for appellants.

The ballots should not have been received in evidence and if. received should have been stricken on the testimony offered.   Davenport v. Olerich, (Iowa) 73 N. W. 603; Delong v. Brown, (Iowa) 85 N. W. 624; Doak v. Briggs, (Iowa) 116 N. W. 115; Keith v. Wendt, (Mich.) 107 N. W. 443; State v. Widule (Wis.) 157 N. W. 769.

Where statutes providing for the preservation and protection of ballots to be used in a contest have not been complied with, or where it appears that the integrity of the ballots has not been preserved, such ballots are not competent evidence to impeach the determination of the board of canvassers.   Farrell v. Larson, 26 Utah, 283, 73 Pac. 227; People ex rel. Williams v. Cicott, 16 Mich. 283, 97 Am. Dec. 141; Martin v. Miles, 40 Neb. 135, 52 N. W. 732; Fenton v. Scott, 17 Or. 189, 20 Pac. 95, 11 Am. St. Rep. 801; Beall v. Albert, 159 Ill. 127, 42 N. E. 166; Thornhill v. Wear, 131 La. 739, 603 South 228; Delong v. Brown, 113 Iowa 370, 85 N. W. 624; Edwards v. Logan, 114 Ky. 312, 70 S. W.

852, 75 S. W. 257; People v. McClellan, 124 App. Div. 215, 108 N. Y. Supp. 765.

*Bangs & Robbins,* for respondents.

The rule supported by the overwhelming weight of authority is that the votes shall be rejected proportionately according to the votes cast in the precinct for the two candidates.

That the votes should be deducted proportionately see: McCrary on Elec. (4th ed.) 495; § 1005 C. L. 1913; People v. Cicott, 16 Mich. 283, at 322, 97 Am. Dec. 941; Ellis v. May, 99 Mich. 538 at 555; 48 N. W. 483 at 488, 25 L. R. A. 325 at 331; Moore v. Sharp, 98 Tenn. 491, 41 S. W. 587; Parker v. Hughes, 64 Kan. 216, 67 Pac. 637, 91 A. S. R. 216, 56 L. R. A. 275; Heyfron v. Mahoney, 9 Mont., 497, 24 Pac. 93, 18 A. S. R. 216; Choisser v. York, 211 Ill., 56 at 66, 71 N. E. 940; Briggs v. Christ, 28 S. D. 562, 134 N. W. 321; Berg v. Beit, 136 Minn. 443, 162 N. W. 522.

Ballots case with assistance in violation of statute void: Constitution § 129; §§ 986, 988 and 990 C. L. 1913; Perry v. Hackney, 11 N. D. 148, 90 N. W. 483; Atty. Gen'l. v. McQuade, 94 Mich. 439, 53 N. W. 944; Atty. Gen'l. v. May, 99 Mich. 538, 58 N. W. 483; Major v. Barker, 99 Ky. 305, 35 S. W. 543; State v. Gay, 59 Minn. 6, 60 N. W. 676; McEwen v. Prince, 125 Minn. 417; 147 N. W. 275; Huston v. Anderson, 145 Cal. 329, 78 Pac. 626; Tebbe v. Smith, 108 Cal. 101, 41 Pac. 454, 49 A. S. R. 68, 29 L. R. A. 673; Patrick v. Runyon, 20 Ky. L. R. 1914, 50 S. W. 538; Gill v. Shuretleff, 183 Ill. 440, 56 N. E. 164; McCreery v. Burnsmeir, 293 Ill. 43, 127 N. E. 171; Rampendahl v. Crump, 24 Okla. 873, 105 Pac. 201; Westville v. Stillwell, 24 Okla. 892, 105 Pac. 664; Ryan v. Waurika, 29 Okla. 655, 119 Pac. 220; Board v. Dill, 20 Okla. 104, 110 Pac. 1107, Ann. Cas. 1912B, 101, 29 L. R. A. (N. S.) 1170.

BIRDZELL, J. Election contest. This is an appeal from a judgment rendered in favor of the contestant. The contest was instituted by the service of notice under § 1046 of the Compiled Laws of 1913. Proceedings were instituted not only against the defendant and appellant named in the title hereto, but against a number of other contestees holding certificates of election. Upon motion of the contestees, made during the trial, all contests except the one involved herein and another were

dismissed. All were tried together and at the conclusion of the trial a judgment was rendered finding that the contestant, Drinkwater, had been duly elected to the office of sheriff. On the face of the returns Nelson received 1619 votes and Drinkwater 1595 votes. Upon a recount of eighteen precincts it was found by the trial court that there were 1597 votes for Drinkwater as against 1599 for the defendant, Nelson. It was further found that certain ballots were cast in favor of the defendant by persons who were not residents of the precinct in which they voted and some by persons who were not citizens of the United States. It was also found that votes were cast and counted for the defendant in three precincts, 21 votes in all, which had not been legally voted—the illegality consisting in assistance rendered by a judge of election where the elector did not require such assistance by reason of any legal disability. Thus on the face of the returns as revised by the recount, thirty votes appearing to have been cast for Nelson were substracted, making the votes stand, as a result of these proceedings, 1597 for the plaintiff to 1569 for the defendant.

The first assignment argued by the appellant is that the notice of contest was not served within the time limited by the statute. Section 1046, Compiled Laws of 1913, says that any person desiring to contest the validity of an election or the right of any person declared duly elected to any office shall give notice in writing to the person whose election he desires to contest within 20 days after the canvass of the votes of such election. The notices of contest were served on December 2, 1920, and it is claimed that the canvass was completed on November 10th or 11th.

Much testimony was directed to the question as to when the canvass was, in fact, completed. The proceedings of the board of county commissioners, as published in the official paper some time after the canvassing was completed, made no reference to the canvass. They show that the board met on November 9th and 10th, and that on the 10th it adjourned to meet again on November 18th. The minutes of the proceedings indicate nothing but the transaction of ordinary county business. There are two copies of the abstract of votes in evidence, both of which are dated November 13th and are signed by the members of the canvassing board. Each one contains a certificate of the county auditor to the effect that it is a true and correct copy of the original abstract, and each of these is dated the 13th. One of the certificates of the canvassing board, however, was apparently dated originally, "November 10," but the "10" is scratched out with a pen, and "13" written

after it. These, in brief, are the circumstances chiefly relied upon by the appellant as showing that the canvass was completed more than 20 days before the service of notice of contest. A clear preponderance of the evidence given by the witnesses, however, establishes that the canvassing board was in session on November 11th and 12th, and that the minutes of the board of county commissioners, as prepared for publication and as published, did not show the true proceedings, or, in fact, any proceedings of the board of canvassers. The trial court's findings in this respect are well supported by the evidence introduced at the trial, and we think it clearly appears that the notices were served within the 20-day period prescribed by the statute. We may observe here that the contestant does not impeach any record actually made of the canvass; and that counsel for the contestee and appellant practically concede that the testimony of the witnesses is against their contention, for they find it necessary to attack this evidence as being "fabricated" or false. The trial court believed the testimony, and we can see no reason for reversing the findings made in so far as credibility is involved.

It is next contended that the court erred in permitting a recount of the ballots cast in Garness and Forthune precincts, for the reason that the ballots so recounted had not been kept as required by law. It seems that an iron box had been provided by the county as a repository for the ballots. This box was kept in a vault in the courthouse, which was set aside for the joint use of the county judge, the clerk of court, and the register of deeds. The box had evidently been provided prior to the increase in the electorate incident to woman suffrage, and was not large enough to hold all the ballots. After it was filled the remaining ballots were stored in the vault, as they came in, upon or near the box. It is claimed that the ballots so kept are not admissible in contest proceedings by virtue of chap. 121 of the Session Laws of 1919. That chapter amends § 1008 of the Compiled Laws of 1913. It provides, among other things, that the election judges shall wrap the ballots by sealing them with sealing wax and stamping the name of the county with a metal stamp provided for the purpose, so that the wrappers cannot be opened without breaking the seal, that they shall be returned by mail to the county judge, and that he shall arrange them in boxes which shall be securely locked and placed in a fireproof vault, where they shall be securely kept for six months. The purpose of the act is declared as follows:

"It is the purpose of this act (section) to provide a safe place for the

keeping of the ballots and to make them readily accessible for use in legal proceedings, and such ballots shall be received in evidence, without further identification or foundation being laid, and any faliure on the part of the election officers to comply with any of the formalities required hereby as to the return of said ballots shall not invalidate any election or cause any ballot otherwise regular to be disregarded and any omissions or irregularities in the manner of identifying or returning the ballots of any precinct may be obviated by proof under the ordinary rules of evidence."

Full compliance with the statute is declared to be a sufficient foundation for identification; but, where the statute has not been strictly complied with, the ordinary legal foundation for identifying the ballots is required. If the contention of appellant's counsel be correct, it would follow that any meritorious contest could be wholly defeated through the mere failure of the county judge to fully comply with the strict letter of the statute. Such is not the evident purpose, for the Legislature has specifically said that any omission "in the manner of identifying" the ballots may be obviated by proof. The failure to keep the ballots as required is an omission in the manner of identifying them, and hence opens the way for ordinary proof under the express language of the statute.

But counsel argue that the ballots should not have been received in evidence because of the condition in which they were found, namely, in bundles with the seals broken, and, in one instance, in a gunny sack, which they contend is not the sack in which they were mailed to the county judge. The sack incident is fully explained in the record, and we think the identity of the original package was fully established. As to the other bundles, the trial court was in a much more advantageous position than this court to determine whether they presented an appearance of having been tampered with, and the ruling will not be reversed unless clearly erroneous.. Moon v. Harris, 122 Minn. 138, 142 N. W. 12. It appears, however, that some of the bundles which had been kept in the box were in no better condition than those that had not been so kept; and it might be further observed that no effort was made to disprove the identity of the ballots themselves, and that, apparently, no ballot was recounted that did not bear all of the evidence of genuineness that is inherent in a regular ballot; such, for instance, as the official stamp and the initials of the inspector of election. We are of the opinion that the ballots were properly received in evidence.

Error is likewise assigned upon rulings of the trial court excluding the opinions of witnesses who observed the counting of the ballots in the precincts, as to whether, in their opinion, it was possible for the errors shown by the recount to have been committed. There was a full showing of the facts in each instance of the manner in which the votes were counted originally by the election officers. Obviously there was no occasion to resort to the conclusions or opinions of witnesses as to the ultimate fact of correct counting. Such opinions were clearly not competent.

This brings us to the question of the individual votes excluded by the trial court on the ground of nonresidence. The appellant challenges the findings of the trial court wherein it was found that Otto Nelson and his wife, W. G. Reibe and his wife, and Clarence Onstatt and Pansy Onstatt, were not residents of their respective precincts on election day. Otto Nelson had been a resident of the county for some years prior to the fall of 1920. Some time prior to August 28, 1920, he advertised in the local paper a public sale of his live stock, farm machinery, and household goods to be held August 28th. The advertisement recites:

"Having sold my farm, and as I am moving out of the country, I will sell at a public auction," etc.

After the sale was held Nelson and his wife remained in the vicinity for some time to collect notes and wind up their business affairs. They went away about a week before election, and the ballots cast were absent voters' ballots. They made a short visit with relatives in a distant part of the state, and did not return to Burke county, but went to California, where they they were apparently settled permanently by December 11th, as a letter of that date so indicates. While there is some evidence that their plans for the future were unsettled at least up until the time they left, we think the evidence as a whole proves that they had left the precinct without any intention of returning, and that it amply supports the finding of the trial court that they were in fact nonresidents at the time of the election. Otto Nelson was a brother of Andrew Nelson, the contestee, and the evidence tends strongly to show that both he and Mrs. Nelson voted for the latter.

We do not understand it to be seriously contended by the appellant that Reibe and his wife were residents of the precincts on election day. The specification that the court erred in finding that Mr. and Mrs. Reibe had voted for the defendant Nelson is likewise apparently abandoned, for it is not argued in the brief. For reasons which will present-

ly appear it is unnecessary to consider the two Onstatt votes.

The court found that Alma Brudvick, Mary Skalicky, and Muriel Bykonen were not legal voters, by reason of being aliens or married to alien husbands. The finding that these women were not legal voters is not attacked by the appellant, but he does complain of the subtraction of the three votes from the contestee. Alma Brudvick voted in Garness precinct, where the women's votes were 4 for Drinkwater and 24 for Nelson. Mrs. Skalicky and Mrs. Bykonen voted in Colville precinct, where the women's votes stood 5 for Drinkwater to 29 for Nelson. It will be seen that the ratio is about one-sixth, and if all evidence as to the political affiliations of these women be ignored and their votes regarded as simply illegal, which does not seem to be disputed, 2½ votes should be subtracted from the Nelson vote, and one-half a vote from the Drinkwater total. McCrary on Elections (4th ed.) §§ 495—497. Thus Nelson's vote stands 1,592½ to Drinkwater's 1,596½. Obviously the result would not be changed if Nelson should be given the benefit of the Onstatt votes and of a ballot marked "Exhibit 121," to the exclusion of which he also excepts. So it is unnecessary to pursue further the subject of the individual votes.

Counsel for the appellant complain of a ruling of the trial court excluding from this contest certain absent voters' ballots in the precinct of Cleary, which were counted for Drinkwater, and of the denial of a motion to permit the defendant to amend his answer so as to exclude these votes from Drinkwater's count. The votes of the Cleary precinct were in no wise involved in the issues presented and tried in this contest. They were not mentioned in the notice of contest nor in the defendant's answer, and the recount was only had for its bearing upon another contest involving the office of county commissioner. The statute provides for the framing of issues through the notice of contest and the answer thereto. Sections 1046 and 1047, Compiled Laws of 1913. Section 1047 requires the defendant to serve an answer within 10 days after the service of notice upon him; and it further requires that "he shall state any other grounds upon which he rests the validity of his election." The motion was not made until the close of the testimony offered by the plaintiff, and, even if it be conceded that the defendant was not required to put these votes in issue in an answer served within 10 days after the notice, and that the trial court had a discretion to permit an amendment, we think the trial court properly exercised any discretion it might have had.

It follows that the judgment of the trial court was right, and it is affirmed.

CHRISTIANSON and ROBINSON, JJ., concur.

BRONSON, J., concurs in result.

GRACE, C. J. (concurring in part and dissenting in part). This case is one of unusual importance. It is one which, if space permitted, should be thoroughly discussed; however, as I alone of the judges of this court arrived at a partially different result than that of the majority opinion, I am inclined to forego any lengthy discussion.

I agree with the conclusion, arrived at in the majority opinion, that the evidence is sufficient to show that the contest was served within 20 days after the completion of the canvassing of the votes. I am of the opinion, however, that the precincts of Garness and Forthune could not be recounted, as the ballots from those precincts were not kept in the iron boxes as required by chap. 121 of the Session Laws of 1919, which amended § 1008, C. L. 1913. We feel quite certain the majority have gone astray in the matter of identification of ballots so as to render them admissible as evidence. There are two distinct identifications of ballots provided for in the above law: (1) The identification by the township election officers; and, (2) identification of the ballots after they have been returned to the county judge, who under the law is made the custodian of them. As to identification by precinct election officers, the law specifies that—

"The judges shall fold in two folds and lay in tiers all ballots counted by them except those which are void, and fold same securely in manila wrappers, not exceeding 200 to each wrapper, on which shall be indorsed in writing or print, the number of the precinct, date on which election was held, and securely seal such wrappers by sealing them with sealing wax and stamping on said wax, the name of the county with a metal stamp provided for that purpose, so that said wrappers cannot be opened without breaking the seal, and return by mail said ballots, together with those found void to the county judge."

This is one method of identification of ballots, and refers exclusively to the identification of them by the precinct election officers. The law further provides:

"Immediately upon receiving such ballots, the county judge shall give receipt therefor to said judges of election and shall place them properly arranged in the order of the precinct numbers in boxes which shall be securely locked. Said boxes shall be placed in a fireproof vault and shall be securely kept for six months, not opening or inspecting them nor allowing any one else to do so, except upon order of court, in case of contested election, or when it shall be necessary to produce them at a trial for any offense committed at elections. * * * It is the purpose of this act (section) to provide a safe place for the keeping of the ballots and to make them readily accessible for use in legal proceedings, and such ballots shall be received in evidence without further identification or foundation being laid."

This is the second method of identification, and refers exclusively to the ballots after they have reached custody of the county judge, and he has complied with the law and has securely locked them in iron boxes. The following also appears at the close of the chapter, and is that which, in our view has led the majority into error:

"And any failure on the part of the election officers to comply with any of the formalities required hereby as to the return of said ballots shall not invalidate any election or cause any ballot otherwise regular to be disregarded and any omission or irregularities in the manner of identifying or returning the ballots of any precinct may be obviated by proof under the ordinary rules of evidence."

The majority opinion applies the identification last referred to, to the ballots after they have reached the custody of the county judge, and it is my view that, that part of the law refers exclusively to the identification of the ballots by the precinct election officer, and that the only identification possible or permissible of ballots after they have reached the custody of the county judge is that provided by the law, namely, that where the ballots have been kept in the manner by the county judge as prescribed by law, that is, in the iron box, and produced in court or any other place where they lawfully may be required to be produced that, that of itself constitutes an identification of the ballots, and the only identification of them that is permissible after the time they have reached the custody of the county judge. If the ballots were so properly identified and produced in court at the trial and it were found that some were not properly initialed as required by law, or were not properly stamped or numbered, then they might properly be identitfied in the manner specified by that part of the law to which reference last above

has been made.

The majority opinion contains the following:

"Full compliance with the statute is declared to be a sufficient foundation for identification; but where the statute has not been strictly complied with, the ordinary legal foundation for identifying the ballot is required. If the contention of appellant's counsel be correct, it would follow that any meritorious contest could be wholly defeated through the mere failure of the county judge to fully comply with the strict letter of the statute. Such is not the evident purpose, for the Legislature has specifically said that any omission in the manner of identifying the ballots may be obviated by proof. The failure to keep the ballots as required is an omission in the manner of identifying them, and hence opens the way for ordinary proof under the express language of the statute."

It will be seen from what the majority have thus said that the latter part of the statute above mentioned is erroneously applied to a subject-matter to which it does not pertain, that is, to the identification of ballots in custody of the county judge. In my view, the ballots outside of the iron box have no evidentiary value whatever.

As the precincts of Garness and Forthune and the ballots therefrom in my view of the law should not have been recounted, and should not have been received in evidence by reason of the total failure of identification, it must follow that the contestant must fail in his contest. Whatever other irregularities there were by which it is claimed a certain number of other ballots should be excluded, including certain ballots of alien voters, and voters who had removed from the precinct prior to the date of election, they are insufficient to change the result of election as that result is shown by the official canvass of the votes by precinct election officers, where no recount is permitted of the votes in Garness and Forthune.

In the recount the trial court deducted 8 men's votes in Garness and 12 women's votes in Forthune from the votes therein cast for Nelson. This the court was without authority to do, as the votes in those precincts were not properly in evidence. The court also deducted 4 votes in Garness on the theory that the voters had been improperly and unlawfully assisted in casting their ballots. It is evident that if this precinct should not have been recounted, these votes could not be deducted.

It may also be mentioned here that, in the companion contest case for the office of county commissioner of John O. Grubb v. Jake Dewing, 187

N. W. 157, if the votes of Forthune precinct cannot be recounted for the reasons above stated, that contest must fail, and this for the reason, that on recount 12 votes were taken from Dewing and given to Grubb or, in other words, Grubb gained 12 votes. In other words, if that precinct cannot be recounted, that fact alone is decisive of that contest, for if all other deductions claimed by Grubb are conceded, they would not be sufficient to overcome Dewing's majority as shown by the officials canvass.

From what has above been stated, it is evident that the exclusion of Garness and Forthune precincts from the recount would terminate both above contests, and result in giving the offices of sheriff and county commissioner to Nelson and Dewing. That result would follow, if my view of the law prevailed, which I feel certain is in accordance with chap. 121 of the Session Laws of 1919. In view of the exclusion above stated, it is unnecessary to discuss the propriety of the exclusion of certain votes on the ground of failure to observe the secrecy of the ballot. We may observe, however, that § 988, C. L. 1913, is a wholesome law, intended to protect the right of franchise; it should be strictly enforced, and where its provisions have been violated by a voter or judge or judges of election, or where others than those specified in the section assist the voters, or where the assistance, if official, is not according to the provisions of that section, it is proper to exclude such ballots, where the evidence shows these facts, or any of them, with reference to a given vote or a number of given votes; that is, where the evidence clearly shows that certain specific individuals, naming them, were assisted in marking their ballots, which assistance was rendered in a manner contrary to the provisions of the section, those votes should be thrown out and declared void.

The majority opinion, however, lays down a rule of evidence that is very broad and far-reaching, as it in effect holds that it was proper for those who were present at the election to state in their opinion the number of voters who were unlawfully assisted in marking their ballots; for instance, it in effect holds that, if a witness should testify that he was present at the polls all day, and that in his opinion or judgment there were a number of voters, estimating the number, or about a given percentage of the vote, again estimating, or guessing at it, who were assisted, contrary to the provisions of law, in marking their ballots, such testimony is competent. The effect of this holding is to place with very few voters in each precinct the power to partially or fully disfranchise

the voters thereof, and to accomplish this result by the most speculative and shadowy testimony, whose basis is guess, doubt, or approximation. 1 am not yet convinced that I should approve such a rule of evidence. There may be cases, proceedings, or conditions which would warrant the admission of that character of testimony, but it not applicable nor admissible in the circumstances of this case.

The judgments appealed from should be reversed. The cases should be remanded, with instructions to the trial court to dismiss the contest proceedings.